**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **Troy Shannon Harlow** | § | **Case No. 17-71487** |
| | § | **Chapter 13** |
| Debtor | § | |
| | § | |

| | | |
|---|---|---|
| | § | |
| **TROY SHANNON HARLOW,** | § | |
| | § | **ADVERSARY NO. 20-07028** |
| **MARK STEPHEN ESTES,** | § | |
| | § | |
| **KIMBERLY PORTER FEWELL,** | § | |
| | § | |
| **BEATRIZ VILLEGAS-RODRIGUEZ** | § | |
| **and RODOLFO RODRIGUEZ,** | § | |
| | § | |
| **on behalf of themselves and all** | § | |
| **others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **WELLS FARGO & CO.,** | § | |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**
**AND APPLICATION FOR INJUNCTIVE RELIEF**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Plaintiffs Troy Shannon Harlow, Mark Stephen Estes, Kimberly Porter Fewell, Beatriz

Villegas-Rodriguez, and Rodolfo Rodriguez (together, "Plaintiffs" and individually "Mr. Harlow,"

"Mr. Estes," "Ms. Fewell," and "Mr. and Mrs. Rodriguez"), on behalf of themselves and all others

similarly-situated, file this original class action complaint against Defendants Wells Fargo & Co.

and Wells Fargo Bank, N.A. (referred to herein together with Wells Fargo & Co., as "Wells Fargo" or "Defendants"), seeking relief for the Plaintiffs and all other similarly-situated consumer bankruptcy debtors who have filed Chapter 13 bankruptcy cases in the Western District of Virginia and elsewhere nationwide, who have been subjected to Defendants' unlawful practice of filing false notices of unauthorized temporary mortgage forbearances. These notices falsely represent, among other things, that the Plaintiffs and other similarly situated Chapter 13 debtors requested temporary forbearance of mortgage payments that they did not, in fact, actually request.

## I.
## PARTIES

**PLAINTIFFS:**

1.      Plaintiff Troy Shannon Harlow is a resident of the Western District of Virginia. He is also the debtor in *In re Troy Shannon Harlow*, Chapter 13 Bankruptcy Case No. 17-71487, which was filed and is currently pending before the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division.

2.      Plaintiff Mark Steven Estes is a resident of the Western District of Virginia. He is also the debtor in *In re Mark Steven Estes*, Chapter 13 Bankruptcy Case No. 17-70327, which was filed and is currently pending before the United States Bankruptcy Court for the Western District of Virginia, Roanoke Division.

3.      Plaintiff Kimberly Porter Fewell is a resident of the Western District of North Carolina. She is also the debtor in *In re Kimberly Porter Fewell*, Chapter 13 Bankruptcy Case No. 20-30194, filed in the United States Bankruptcy Court for the Western District of North Carolina, Charlotte Division.

4.      Plaintiffs Beatriz Rodriguez-Villegas and Rodolfo Rodriguez are residents of the Southern District of Texas. They are also the debtors in *In re Rodolfo & Beatriz Rodriguez-*

*Villegas*, Chapter 13 Bankruptcy Case No. 20-10074, which was filed and is currently pending before the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division.

**DEFENDANTS:**

5.      Defendant Wells Fargo & Co. is a diversified financial services company headquartered in San Francisco, California that provides banking, insurance, investments, mortgage banking, and consumer finance through banking stores, the internet, and other distribution channels to customers, businesses, and other institutions in all 50 states and in other countries.  Wells Fargo & Co. is the parent corporation of Defendant Wells Fargo Bank, N.A. Wells Fargo & Co. exercises specific and financial control over the operations of Defendant Wells Fargo Bank, N.A., dictates the policies, procedures, and practices of Wells Fargo Bank N.A., exercises power and control over the specific activities upon which the claims herein are based, and is the ultimate recipient of the ill-gotten gains described herein.

6.      Defendant Wells Fargo & Co. may be served with process through its registered agent, CSC – Lawyers Incorporating Service, at 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833.

7.      Defendant Wells Fargo Bank, N.A. is a subsidiary of Wells Fargo & Co. Wells Fargo Bank, N.A. is a national association that is headquartered in South Dakota and may be served with process through its registered agent, Corporation Service Company, at 327 Hillsborough Street, Raleigh, North Carolina 27603. Wells Fargo Bank, N.A. can also be served via certified mail through Michael V. Bradford, President, at 101 North Phillips Avenue Sioux Falls, SD 57104. Wells Fargo Bank, N.A. conducts mortgage servicing operations through its Wells Fargo Home

Mortgage division, which is headquartered in Des Moines, Iowa. Plaintiffs' mortgages are currently serviced by Wells Fargo Bank, N.A.

## II.
## JURISDICTION AND VENUE

8.      Jurisdiction of this action arises under 28 U.S.C. § 1334 and §§157(b) and (c). Plaintiffs assert claims against Defendants for violation of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiffs Estes's and Harlow's claims occurred in this district, Plaintiffs Harlow and Estes filed for bankruptcy protection in this district, Defendants participated in the preparation and filing of the Rule 3002.1 notice and Notice of Forbearance in connection with Plaintiffs Harlow's and Estes's bankruptcy cases in this district, and Defendants transact business in this district.

10.      Pursuant to Fed. R. Bankr. P. 7008(a), Plaintiffs consent to the entry of final orders or judgment in this adversary proceeding by the bankruptcy judge. Further, to the extent that any court determines that the Bankruptcy Court does not have authority to enter a final judgment on any cause of action set forth herein, Plaintiffs request that the Bankruptcy Court issue a report and recommendation for entry of a proposed judgment on such cause(s) of action to the United States District Court for the Western District of Virginia.

## III.
## BANKRUPTCY COURT AUTHORITY TO ADJUDICATE
## THIS MATTER AS A NATIONWIDE CLASS ACTION

11.      28 U.S.C. § 1334(a) confers upon district courts the original and exclusive jurisdiction of all cases under Title 11.

12.     28 U.S.C. § 1334(b) provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."

13.     28 U.S.C. § 157(a) authorizes district courts to refer cases falling within the ambit of § 1334 to bankruptcy judges for that district.

14.     The Order of Reference applicable in the Western District of Virginia provides that "all cases under title 11, U.S.C. and all proceedings arising under title 11, U.S.C. or arising in or related to a case under title 11, U.S.C. pending on this date or filed on or after this date in the Western District of Virginia are referred to the bankruptcy judge for this District…" *Order of Reference, 1984* (W.D. VA Jul. 25, 1984).

15.     Plaintiffs' claims invoke substantive rights created by the Bankruptcy Code and Rules and therefore fall within the Court's "arising under" jurisdiction. *See Jones v. Atlas Acquisitions, LLC,* 16-03235, Order Denying Atlas Acquisitions LLC and Avi Schild's Motion to Dismiss Plaintiff's Class Certification Claims, Docket No. 44 (Bankr. S. D. Tex. May 19, 2017) (Bohm). **Exhibit A**. *See also*, *Cano v. GMAC Mortgage Corp. (In re Cano)*, 410 B.R. 506 (Bankr. S.D. Tex. 2009); *Noletto v. Nationsbanc Mortgage Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S.D. Ala. 2000).

16.     This Court also has "arising in" jurisdiction in this case because Plaintiffs' claims can only arise in bankruptcy, as they relate to false and unauthorized forbearance notices filed by Defendants in Plaintiffs' and the other putative class members' Chapter 13 bankruptcy cases.

17.     Bankruptcy courts are authorized to handle class actions in adversary proceedings through Fed. R. Bankr. P. 7023, incorporating Fed. R. Civ. P. 23, which provides the authority and

procedure through which federal courts certify class actions.  *In re Wilborn*, 609 F.3d 748, 754 (5th Cir. 2010); *In re Tate*, 253 B.R. 653, 663 (Bankr. W.D. N.C. 2000).

18.    Because the District Court for the Western District of Virginia has jurisdiction over a nationwide class of debtors, this Court, operating as a unit of the District Court for the Western District of Virginia, has the authority to adjudicate all matters that fall within the District Court's bankruptcy jurisdiction. 28 U.S.C. § 1334. Thus, based on the language set forth in 28 U.S.C. §§ 1334 and 157, and the Western District of Virginia's *Order of Reference, 1984*, this Court may exercise jurisdiction over a nationwide class of debtors, including the class Plaintiffs seek to represent as set forth in this complaint, provided Plaintiffs and the putative class satisfy all other requirements of Fed. R. Bankr. P. 7023 for certification of a class action.

## IV.
## FACTS

19.    Plaintiffs file this case on behalf of themselves and all other similarly-situated consumer debtors who have filed for bankruptcy protection under the provisions of Chapter 13 of the United States Bankruptcy Code (11 U.S.C. § 1301 *et seq*.), in order to redress and enjoin Defendants' filing of false and disruptive notices of forbearance on Bankruptcy Courts' dockets and claims registers around the country.  Among other things, such notices (a) falsely assert that Chapter 13 debtors' loans are in forbearance status when such debtors have not requested forbearance, and (b) to the extent such notices include payments that have already come due, they violate the requirements of Fed. R. Bankr. P. 3002.1(b), which requires mortgage creditors to file and serve notices of mortgage payment change no fewer than 21 days prior to the effective date of the payment change. Moreover, Wells Fargo's false forbearance notices violate borrowers' plan confirmation orders and/or improperly interfere with plan confirmation by purporting to unilaterally alter the borrower's mortgage loan obligations under debtors' proposed or already

confirmed Chapter 13 plans.

A.    **SUMMARY OF CASE**

20.    Wells Fargo is a mortgage servicing company, which means that borrowers like the Plaintiffs and the putative class members make their monthly mortgage payments to Wells Fargo, which is responsible for collecting and applying borrowers' payments on behalf of the owner of the borrowers' mortgage loans in accordance with the requirements of the borrowers' loan documents and applicable law, including relevant provisions of the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA), as implemented through Regulations X (RESPA) and Z (TILA).

21.    As part of its mortgage servicing operations, Wells Fargo collects borrowers' monthly payments, which are applied to principal and interest, taxes and insurance, and other fees and charges that may have been assessed to such accounts. Wells Fargo then disburses these payments to the appropriate parties, such as lenders, investors, taxing authorities, insurers, and other relevant entities.

22.    Wells Fargo earns revenue from mortgage loan servicing in several ways. Without limitation, examples of ways that Wells Fargo earns revenue for mortgage loan servicing include: (a) Wells Fargo earns a per-loan servicing fee established by its servicing agreements with the owner(s) or investor(s) that are entitled to payment of the principal and interest payments set forth in the mortgage loan instruments (i.e. Note and Deed of Trust / Mortgage); (b) Wells Fargo earns "float" income on unapplied funds, which accrues for the time between when consumers pay and when funds are remitted to the loans' owners; (c) Wells Fargo retains all or part of certain fees it collects from borrowers, such as late charges, and (d) for loans Wells Fargo services for Fannie Mae and/or Freddie Mac (GSE Loans), Wells Fargo earns incentive payments after loans are

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
AND APPLICATION FOR INJUNCTIVE RELIEF   7**

placed in forbearance and borrowers accept and comply with certain "workout options" offered by Wells Fargo to cure the forborne payments, which generally involve repayment plans, deferral agreements, or specific kinds of loan modifications.

23.     The CARES Act's forbearance provisions apply to federally-backed mortgages, which includes loans serviced by Defendants on behalf the government-sponsored entities ("GSEs") that acquire, securitize, and insure repayment of the majority of consumer mortgage loans in America, including the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), the Fair Housing Administration ("FHA"), Federal Housing Finance Agency ("FHFA"), and the U.S. Department of Veterans Affairs ("VA") (collectively, the "GSEs").

24.     Effective July 1, 2020, GSEs Fannie Mae and Freddie Mac have implemented an "incentive fee structure" in connection with CARES Act forbearance provisions, which pays mortgage servicers incentive fees when borrowers complete workout options for payments that came due during the forbearance period. These options include repayment plans, payment deferrals/COVID-19 payment deferrals, and certain types of mortgage modifications.

25.     Additionally, with respect to loans Wells Fargo services on behalf of Fannie Mae (including Mr. & Mrs. Rodriguez's loan) and Freddie Mac, Wells Fargo can receive "reimbursement" of $100 for filing forbearance notices in the borrower's bankruptcy case, with a maximum "reimbursement" of $200 in the event two or more forbearance notices are filed in a single bankruptcy case.

26.     Wells Fargo and its network of attorneys and vendors, including (without limitation) Black Knight Financial Services, Inc. ("Black Knight"), James E. Albertelli, P.A. d/b/a ALAW a/k/a Albertelli Law a/k/a Albertelli Enterprises ("ALAW"), and InfoEx LLC ("InfoEx"),

among others, work together to further Wells Fargo's efforts to (a) identify Chapter 13 debtors

with Wells Fargo-serviced federally-backed mortgage loans, (b) prepare, execute, file, and serve

false forbearance notices in such Chapter 13 debtors' bankruptcy cases, and (c) to solicit attorneys

representing debtors in Chapter 13 bankruptcy in whose cases such false forbearance notices are

filed to negotiate workout agreements with Defendants to recover the payments that the

forbearance notices falsely assert were forborne and not paid by such borrowers.

27.     Defendants use Black Knight's MSP mortgage loan servicing system and

associated communication network as a common mortgage loan servicing and accounting system

of record to store mortgage loan data, including data associated with the forbearance notices

prepared, executed, filed, and served by Defendants, as well as to track the efforts of Defendants

to secure lucrative loan workout incentive payments following the manufactured and false

"forbearance" periods documented by these false notices.

28.     ALAW describes itself as "a full-service real estate law firm with attorneys

practicing in offices across the Southeastern United States. The Firm represents institutional and

private lenders, as well as investors, throughout the loan life cycle from securitization to

origination and asset reclamation."

29.     ALAW owns, controls, and directs the operations of a host of related and/or

subsidiary law offices / legal services entities ("law offices") that employ licensed attorneys who

provide foreclosure and bankruptcy-related legal services in bankruptcy courts and state courts,

mostly in the South and Southeastern United States, including Florida, Georgia, Alabama,

Arkansas, North Carolina, South Carolina, Ohio, Tennessee, and Texas.

30.     ALAW is wholly owned by James E. Albertelli ("Albertelli"), an attorney licensed

to practice law in Florida and Georgia.

31.     Upon information and belief, Albertelli is also the owner and Chief Executive Officer of InfoEx, which is a Delaware Limited Liability Corporation that shares offices with those of ALAW at 5404 Cypress Center Drive, Suite 300, Tampa, Florida.

32.     According to a website maintained by ALAW and InfoEx, InfoEx was "created by industry experts to deliver national end-to-end and modular default services and technology strategies. Through a unique synergy of technology, services, and embedded legal review, the InfoEx Servicing Suite supports a dramatic reduction in the cost and risk associated with the servicing of a defaulted asset."

33.     The "industry experts" who helped "create" InfoEx include various individuals who are former employees of Lender Processing Solutions a/k/a "LPS," which is now owned by and known as Black Knight Inc., a publicly traded entity that provides and supports a mortgage servicing and accounting platform commonly known as "MSP," along with its companion application, "LoanSphere," which is the system of record used by Defendants in connection with the servicing of the Plaintiffs' and other class members' mortgage loans.

34.     InfoEx is not a law firm and does not purport to offer legal services itself.

35.     Wells Fargo relies upon InfoEx and other vendors that provide similar services to serve the false forbearance notices after they have been executed and filed by Wells Fargo's non-attorney personnel.

36.     When Defendants file false notices of forbearance in cases of borrowers whose Chapter 13 plans have not yet been confirmed, as was the case with the Rodriguez Plaintiffs, these false forbearance notices call into serious doubt the feasibility of their proposed plans, a mandatory precondition to confirmation of such borrowers' Chapter 13 plans, by giving the false appearance that such debtors are experiencing greater financial hardship than their schedules and statements

of financial affairs disclose.

37.     Similarly, for borrowers like Plaintiffs Harlow, Estes, and Fewell, whose Chapter 13 plans have already been confirmed, Defendants' filing of these false forbearance notices indicates a change in circumstance that warrants explanation and potential adjustment of either such debtors' Chapter 13 plans (to increase distributions to lower-priority creditors based on the debtors' apparent access to additional disposable income during the period in which such notices indicate the debtors' mortgage payments are suspended), or, the debtors could be asked to update their budget information and/or amend their income and expense schedules on file with the Bankruptcy Court to account for the apparent change in circumstances reflected by Defendants' false representations that such debtors requested a forbearance of their mortgage payment obligations.

38.     Moreover, in addition to being patently false insofar as they represent that the putative class members requested forbearance of their mortgage loans when they made no such request, these notices also falsely assert that the debtors' mortgage loans have been in forbearance for one or more months *prior* to the filing of the notices, including months for which Plaintiffs and other putative class member debtors had already made their monthly mortgage payments, either directly to Wells Fargo or to the Chapter 13 Trustee in cases with confirmed "conduit" plans (i.e. plans in which the Trustee serves as the disbursing agent).

39.     These notices also misrepresent that the terms of such notices were lawful and authorized by the CARES Act and the underlying mortgage loan documents, applicable bankruptcy law, and that they were approved and/or accepted by the Plaintiffs and/or the other class members.

40.     Many of Defendants' false and unauthorized notices of temporary forbearance are

filed on the Bankruptcy Courts' official dockets for borrowers' Chapter 13 cases, along with all of the other filings, including the bankruptcy petitions, plans, schedules, disclosures, motions, orders, and the like – documents that are ordinarily signed and filed by licensed attorneys and/or by the Bankruptcy Court itself.

41.     In other cases, including Mr. Harlow's case, Defendants file the false forbearance notices on the Court's claims register, using a modified version of Official Form 410S1, which ordinarily is used to disclose changes in the debtor's monthly mortgage payment in accordance with Rule 3002.1's requirements.

42.     For each of the Plaintiffs, Defendants' false forbearance notices, whether filed on dockets or on courts' claims registers, are signed by non-attorneys and filed on Bankruptcy Courts' official dockets and claims registers in Plaintiffs' cases. These false forbearance notices "defile the temple of justice," such that they constitute a widespread fraud on this nation's Bankruptcy Courts that has needlessly created chaos in Plaintiffs' and other class members' Chapter 13 cases, unnecessarily burdening debtors and their counsel, as well as Bankruptcy Courts and the Chapter 13 Trustees responsible for administering these borrowers' Chapter 13 cases.

43.     Importantly, "forbearance" of mortgage payments is not forgiveness of the borrower's obligation to make these payments. Rather, forbearance only puts off the borrower's duty to make mortgage payments during the applicable forbearance period. At the conclusion of the forbearance period, any missed payments become immediately due and owing, unless the borrower makes alternative repayment arrangements with the servicer of the borrower's mortgage loans. In mortgage servicing parlance, these alternative repayment arrangements are known as "workout options."

44.     For Chapter 13 debtors, the Bankruptcy Code and Rules already authorize a Court-

supervised equivalent of workout options for debtors who miss mortgage payments while their Chapter 13 cases are pending, i.e. modification of the debtor's plan to address the missed post-petition payments.

45.     These workout options are accomplished most frequently in Chapter 13 cases by (a) modifying the terms of debtors' Chapter 13 plans to provide for the cure of any missed payments through funds paid by the debtors to the Chapter 13 Trustee, who then distributes the payments to the mortgage servicers, (b) entering into Court-ordered repayment plans in which debtors cure their post-bankruptcy arrearages by making one or more direct payments to the mortgage servicer, or (c) through post-petition mortgage modifications, which ordinarily are fully disclosed, subject to Court oversight, and are formally approved by Bankruptcy Court order *prior to taking effect*.

46.     Moreover, Chapter 13 debtors with plans that were confirmed prior to passage of the CARES Act by Congress are permitted under the CARES Act to cure any post-petition arrears on secured debt payments by extending the term of their Chapter 13 plans by up to two years (24 months) beyond the Bankruptcy Code's pre-CARES Act maximum of five years (60 months).

47.     Defendants, as servicing agents for Plaintiffs' and other class members' secured creditors, have no authority under the Bankruptcy Code and Rules to unilaterally modify a Plaintiffs' and other class members' Chapter 13 plans by motion, notice, or otherwise, including by filing a false forbearance notice.

48.     Defendants' false forbearance notices needlessly burden not only debtors, but also the bankruptcy judges (and their staff), Chapter 13 Trustees (and their staff), and other parties in interest involved with the debtors' Chapter 13 case who can no longer rely on the veracity of Wells Fargo's representations to the Court.  Such parties are now forced to investigate and determine

whether every claimed forbearance in a notice filed by Defendants is legitimate, and if not, what action they must take to prevent implementation of the terms of the false forbearance notices by the Trustee.

49.     This burden is exemplified by the communications Chapter 13 trustees for this district have sent to the attorneys practicing in this district regarding the additional work in reviewing and evaluating these notices that trustees have now been forced to undertake as a consequence of Defendants' practice of filing false forbearance notices. *See* **Exhibit B**, Email from Herbert L. Beskin to local bar, dated June 3, 2020.

50.     It is also important to clarify what this case is not about: Plaintiffs in this case do not seek to prevent any Chapter 13 debtor from properly entering into a forbearance agreement that such debtor has requested, understands, and wants, and which has been disclosed to and approved by their Chapter 13 Trustees and bankruptcy courts through proper, transparent disclosures and procedures, as required by the Bankruptcy Code and Rules and, to the extent applicable, Local Bankruptcy Rules.

51.     Fed. R. Bankr. P. 3002.1 ("Rule 3002.1") was established to require mortgage servicers to disclose post-petition mortgage payment changes so Chapter 13 debtors have the information they require to be able to make their future post-petition mortgage payments in the proper amount, which is critical for their ability to emerge from Chapter 13 bankruptcy with a current mortgage loan.

52.     Defendants' false forbearance notices thwart the intent and purposes of Rule 3002.1 by including previous months' payments in the false forbearance period indicated by such notices, even when, as is the case with all of the Plaintiffs, the debtors had already made post-petition payments for one or more of the months Defendants falsely assert have been forborne at such

debtors' requests.

53.     Defendants' actions are, unfortunately, another example of Wells Fargo manipulating the bankruptcy process to obtain results that benefit it financially, without regard for the desires or needs of its customers, much less federal bankruptcy law, the existing rules, and orders of bankruptcy courts, including plan confirmation orders and Fed. R. Bankr. P. 3002.1.

54.     Defendants already know that these borrowers are in bankruptcy, and Defendants have no basis to assert that these borrowers have requested forbearances of their monthly mortgage payment obligations.

55.     Regardless of Defendants' motives, it is nevertheless contrary to the long-established requirements of our judicial system for Defendants to allow non-attorney representatives to execute, file, and serve these notices on Bankruptcy Courts' dockets and claims registers without attorney review and approval.  Corporations are only permitted to participate in federal court proceedings through counsel; they generally cannot represent themselves, although that is precisely what Defendants are doing by filing the false forbearance notices in borrowers' Chapter 13 cases.

56.     Defendants also do not communicate with debtors' counsel prior to filing the false forbearance notices. Thus, when they are filed, these notices come as a surprise to everyone but the Defendants, and therefore they require needless investigation and action by debtors, debtors' counsel, Chapter 13 Trustees, and bankruptcy courts responsible for administering the cases in which such notices are filed.

57.     What ought to happen, even in the extraordinary circumstances presented by the COVID-19 pandemic, is that debtors (through counsel) and the mortgage servicer (Wells Fargo) should first communicate and reach agreement about a proposed forbearance and subsequent

workout option, which they would then present to the Court for approval in the form of a plan modification or agreed order pursuant to Fed. R. Bankr. P. 4001(d), prior to unilaterally imposing forbearance on debtors' mortgage loans and filing false forbearance notices with the nation's bankruptcy courts.

58.     In "conduit" cases (i.e. cases where  the Chapter 13 Trustee is responsible for making borrowers' ongoing monthly mortgage payments in addition to disbursements to the debtor's creditors on pre-petition debts), when the Trustee receives notification that a debtor's monthly mortgage payment has changed, the result is that the Chapter 13 Trustee often recalculates the allocation of disbursements of debtor's plan payments (funds paid to the Trustee by the debtors pursuant to their Chapter 13 plan) depending on the nature of the change in the mortgage payment.

59.     Consequently, in conduit cases where the debtor's creditors holding pre-petition unsecured debts are slated to receive less than 100% of their allowed claims, absent plan amendment, when the debtor's post-petition mortgage payment goes down, the debtor's Chapter 13 plan payment to the Trustee stays the same, but the amount that the Chapter 13 Trustee pays to unsecured creditors increases by the amount of the reduction in the debtor's mortgage payment. In other words, the "forbearance" adds no value to the debtor, whose responsibility under the Court-confirmed Chapter 13 plan remains unmodified.

60.     Similarly, in so-called "direct pay" cases (i.e. those cases in which debtors pay their post-petition monthly mortgage payments by sending funds directly to their mortgage loan creditor or its loan servicing agent), reductions in monthly mortgage payments can result in Chapter 13 Trustees seeking to increase the debtor's Chapter 13 plan payment when the mortgage payment decreases, as it does when a loan is in forbearance, on the theory that additional funds are available because the borrower is no longer making a mortgage payment.

61.    Thus, Defendants' filing of false forbearance notices sabotages the Chapter 13 process, and ignores and violates Bankruptcy Rule 3002.1, breaches the debtor's mortgage contract, undermines the Chapter 13 Trustee's administration of the debtor's confirmed Chapter 13 plan, and places the Chapter 13 debtors at risk of foreclosure.

62.    Plaintiffs therefore seek certification of a nationwide class of similarly situated consumer debtors, as well as an order of this Court permanently enjoining these practices. Plaintiffs also ask the Court to allow the class to recover appropriate monetary relief from Defendants, including punitive damages and/or monetary sanctions for the Defendants' unjust enrichment and other harms the members of this putative class and the Chapter 13 process have suffered as a consequence of Defendants' illegal scheme, as well as class counsel's reasonable attorneys' fees and expenses.

**B.     PLAINTIFFS' BACKGROUND AND BANKRUPTCY CASES**

*Troy Shannon Harlow*

63.    On November 2, 2017, Plaintiff Troy Shannon Harlow filed his petition for Chapter 13 bankruptcy in the Western District of Virginia, Roanoke Division, which was assigned Case No. 17-71487 by the Bankruptcy Court.

64.    Mr. Harlow's home is encumbered by a lien securing repayment of a mortgage loan serviced by Wells Fargo.

65.    Mr. Harlow filed his Chapter 13 bankruptcy to address debts he incurred and/or assumed when he and his former wife divorced.

66.    Mr. Harlow, who had medical issues that required a kidney transplant, has been deemed 100% disabled and is unable to return to work with the railroad where he was employed when his health began to deteriorate.

**PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT
AND APPLICATION FOR INJUNCTIVE RELIEF   17**

67.     Mr. Harlow did seek and obtain a temporary reduction in his Chapter 13 plan payment due to his non-filing spouse's loss of income due to COVID-19, but the amended plan filed on April 17, 2020 specifically provided he was current on his mortgage and that he would continue making regular monthly mortgage payments to Wells Fargo.

68.     Wells Fargo did not object to the amended plan, which was confirmed on June 2, 2020.

69.     Mr. Harlow was current on his mortgage payments when he filed his bankruptcy petition, and he has remained current on his post-petition monthly mortgage payments since filing for bankruptcy in 2017.

70.     Wells Fargo filed a proof of claim in Mr. Harlow's bankruptcy case, claiming $0.00 in pre-petition arrearages.

71.     Defendants' false forbearance notice filed on the Claims Register for Mr. Harlow's case was filed on April 29, 2020 as a Rule 3002.1 Notice of Mortgage Payment Change, using Official Form 410S1, which was executed and filed by Wells Fargo's non-attorney representative, "Thomas R. Dautel, VP Loan Documentation."

72.     The April 29, 2020 Rule 3002.1 notice indicated that the forbearance would be effective beginning with the May 1, 2020 payment.

73.     Like the false forbearance notices Defendants filed in the other Plaintiffs' Chapter 13 cases, the forbearance notice Wells Fargo filed in Mr. Harlow's case asserts, falsely, that "[Mr. Harlow] has requested, and Creditor\Servicer has provided a temporary suspension of mortgage payments."

74.     Mr. Harlow did not request a forbearance of his mortgage loan payment obligations, did not contact Wells Fargo about a forbearance, and he did not and does not want a forbearance

of his mortgage payment obligation.

75.     Defendants also improperly modified the form of the Official Form 410S1 that they used when they filed the false forbearance notice on the Claims Register for Mr. Harlow's Chapter 13 case, adding the following unauthorized language to their filing:

> **The use of Official Form 410S1 and of the electronic filing method for a Notice of Payment Change is being used to provide interested parties with notice of the forbearance arrangement, detailed below. It is only being used due to limitations on existing functionality available to limited users within the Courts' CMECF systems.  The use of this form in no way implies that a payment change is occurring or has occurred on the account.  This filing does not imply that the provisions of FRBP 3002.1 apply to this filing, nor does the Servicer\Creditor consent to the application of any provisions of FRBP 3002.1 to this filing.**

76.     At the time that Wells Fargo filed its false forbearance notice in Mr. Harlow's case, using its improperly modified Official Form 410S1, Mr. Harlow was current on his post-petition monthly mortgage payments.

77.     Because of his relatively static income, Mr. Harlow needs to be allowed to make his regular monthly mortgage payments. If he were to be required by the Court or the Chapter 13 Trustee to increase his plan payments to pay other debts based on a misunderstanding created by Defendants' false forbearance notice filed in Mr. Harlow's case, i.e. that his mortgage payment obligations have been suspended because of his disability, Mr. Harlow would not have the option to work extra hours or take on a second job to cure the allegedly forborne payments. He also might not be able to secure other loan workout options with Defendants, in which case he could lose his home or be forced back into another bankruptcy to attempt to cure the payments included in Wells Fargo's false forbearance notice filed in Mr. Harlow's case.

78.     On June 18, 2020, Mr. Harlow's bankruptcy attorneys filed an objection to Defendants' false forbearance notice.

### *Mark Stephen Estes*

79.     Plaintiff Mark Stephen Estes filed his Chapter 13 Bankruptcy Petition on March

14, 2017 (VAWB Case No. 17-70327), and the Bankruptcy Court entered its order confirming Mr. Estes's Chapter 13 plan on May 4, 2017. (Estes Docket No. 18).

80.    Wells Fargo is the servicer of Mr. Estes's mortgage loan, which is secured by a lien against his home.

81.    Mr. Estes is paying his post-petition arrears and his ongoing post-petition monthly mortgage payments via the Chapter 13 Trustee pursuant to the terms of Mr. Estes' confirmed Chapter 13 plan and all subsequent amendments thereto.

82.    Mr. Estes has been employed for the last 17 years by Volvo, although he was temporarily furloughed in March of 2020 due to the shutdown precipitated by the COVID-19 pandemic.

83.    On April 10, 2020, Mr. Estes filed an amended plan that proposed to (a) forgive Mr. Estes's April 2020 plan payment and any arrearage resulting from the reduction in income caused by Volvo's furlough, (b) reduce Mr. Estes's trustee payment for May of 2020 to $1,000, and (c) extend Mr. Estes's Chapter 13 plan to 62 months (extending the remaining number of monthly payments under Mr. Estes' Chapter 13 plan) as authorized by the provisions of the CARES Act.

84.    As of April 10, 2020, Mr. Estes had already cured his post-petition mortgage arrearages, having cured the post-petition mortgage arrearages through the Chapter 13 Trustee in accordance with the provisions of an agreed order resolving a motion for relief from stay Wells Fargo filed early in Mr. Estes's Chapter 13 case.

85.    Mr. Estes's April 10, 2020 amendment to his Chapter 13 plan does not contemplate any forbearance of Mr. Estes's post-petition monthly mortgage payments, nor does it seek to add any post-petition mortgage arrearage to be paid through his Chapter 13 plan.

86.     The Court approved Mr. Estes's April 10, 2020 amended Chapter 13 plan by order entered June 1, 2020.

87.     On May 11, 2020, well after Mr. Estes had cured his pre- and post-petition mortgage arrearages, Wells Fargo, through a non-attorney representative identified as, "Nickesha Presley, VP Loan Documentation," filed a false "Notice of Temporary Forbearance" on the Court's docket for Mr. Estes's Chapter 13 case (Estes Docket No. 77).

88.     Mr. Estes did not request a forbearance of his mortgage loan, did not contact Wells Fargo about forbearance or any other loss mitigation option in connection with his pandemic-related employment changes (or otherwise), and Mr. Estes did not want and does not want a forbearance of his mortgage payment obligations, which are already provided-for in his confirmed Chapter 13 plan, as amended.

89.     The May 11, 2020 Forbearance notice Wells Fargo filed in Mr. Estes's Chapter 13 case also indicates that the (unwanted) three-month mortgage forbearance would apply to Mr. Estes's post-petition mortgage payment due for May 1, 2020 and would continue through and including the July 2020 monthly mortgage payment.

90.     At the time Wells Fargo filed the false forbearance notice in Mr. Estes's Chapter 13 case, pursuant to the terms of Mr. Estes's confirmed amended Chapter 13 plan, the Trustee had disbursed funds to Wells Fargo for Mr. Estes's post-petition mortgage payments through and including the post-petition installment for April 2020 and was holding funds sufficient to satisfy the May 2020 monthly mortgage payment and the June 2020 was not yet due.

91.     Defendants' preparation, execution, filing, and service of the false forbearance notice in Mr. Estes's Chapter 13 case caused harm to the debtor, debtor's counsel, the Chapter 13 Trustee, and the Court, all of whom have been needlessly burdened by Defendants' false filing.

92.     On May 13, 2020, Mr. Estes's counsel filed an objection to the Defendants' false forbearance notice filed in his Chapter 13 case.

93.     Instead of filing a substantive response to Mr. Estes's objection and coming to Court to explain its error, Wells Fargo filed a response that simply stated, without explanation, that its forbearance notice filed in Mr. Estes's case was "erroneously filed," while further confusing the issues by making another false statement, characterizing the false forbearance notice being withdrawn as a notice of *debtor's* request for mortgage forbearance.

94.     Adding insult to injury, Wells Fargo's response asserts, without explanation, that "no action detrimental to the Debtor was taken by Creditor."

95.     Mr. Estes denies that Defendants' filing and subsequent attempted unilateral withdrawal of the false forbearance notice was not detrimental to him.

96.     By filing the false forbearance notice in Mr. Estes's Chapter 13 case, Defendants impermissibly interfered with Mr. Estes's mortgage loan contract and the Court's plan confirmation orders.

97.     Upon information and belief, Defendants, through Wells Fargo's designated non-attorney representative, Ms. Presley, have filed false notices with the Court without performing appropriate due diligence to verify the assertions contained in the forbearance notice, without the supervision and approval of an attorney licensed to practice in this Court, and they did so without consideration for the potential harmful impact that could result from filing this false forbearance notice for debtors, debtors' counsel, the Chapter 13 Trustees, and this honorable Court.

### *Kimberly Porter Fewell*

98.     On February 14, 2020, Plaintiff Kimberly Porter Fewell filed her voluntary Chapter 13 petition in the Western District of North Carolina, Charlotte Division.  Chapter 13 Case No. 20-30194, Docket No. 1 (hereinafter, "Fewell Docket No. [x]").

99.     Throughout the pendency of her Chapter 13 case, Ms. Fewell has made all required post-petition mortgage payments in accordance with the requirements of her confirmed Chapter 13 plan.

100.    Ms. Fewell's Chapter 13 Plan, which was confirmed by order of the Bankruptcy Court on April 28, 2020, proposed that Ms. Fewell would pay $1,025.00 per month for a 1% distribution on the allowed amount of her general unsecured creditors' claims, inclusive of Ms. Fewell's ongoing monthly mortgage payments.  *See* Fewell Docket Nos. 2 and 17.

101.    On May 12, 2020, "Eugenia Ijames" a/k/a Eugenia I. James a/k/a Eugenia L. James, who was, upon information and belief, acting in her capacity as an employee or authorized agent of Defendant Wells Fargo at the time, filed a "Notice of Temporary Forbearance" (the "Fewell Forbearance Notice") on the Court's docket for Ms. Fewell's Chapter 13 Bankruptcy.  Fewell Docket No. 19.

102.    The Fewell Forbearance Notice falsely states that, "due to a financial hardship resulting directly or indirectly from the COVID-19 emergency," Ms. Fewell "requested, and Creditor\Servicer [sic] has provided a temporary suspension of mortgage payments."

103.    Ms. Fewell has not experienced a financial hardship resulting directly or indirectly from the COVID-19 emergency, as she is employed by the grocer, Food Lion, and therefore has been designated an essential worker and has not had her employment disrupted by the pandemic.

104.    Ms. Fewell did not ask Wells Fargo to suspend her mortgage payments, temporarily or otherwise.

105.    The Fewell Forbearance Notice also falsely states, "[t]his short-term relief is consistent with the COVID-19 relief available under the Coronavirus Aid, Relief, and Economic Security (CARES) Act."

106.    However, the CARES Act requires that the borrower (a) attest to experiencing a financial hardship due to the COVID-19 emergency and (b) request a forbearance of her obligation to make monthly mortgage payments.

107.    Since Ms. Fewell neither attested to experiencing a financial hardship due to the COVID-19 emergency nor requested a forbearance of her monthly mortgage payment obligation, the forbearance described in Wells Fargo's notice was not consistent with the CARES Act's requirements.

108.    The Fewell Forbearance Notice, filed on May 12, 2020, also falsely states that the "Effective Date" of the forbearance Ms. Fewell did not request was April 1, 2020, meaning at the time Defendants filed the false forbearance notice in Ms. Fewell's Chapter 13 bankruptcy case, the alleged forbearance would have been applicable to two monthly payments (April and May 2020) that Ms. Fewell had already made through her plan payments to the Chapter 13 Trustee.

109.    Thus, by filing the Fewell Forbearance Notice, Defendants falsely implied to the Court and the Chapter 13 Trustee that Ms. Fewell was in violation of the requirements of her confirmed Chapter 13 plan, which required Ms. Fewell to make monthly mortgage payments for April and May of 2020.

110.    Nothing in Ms. Fewell's mortgage note or deed of trust, or her Chapter 13 plan, authorizes either the borrower or the servicer to unilaterally alter the loan terms.

111.    The Fewell Forbearance Notice implies that Ms. Fewell would be required to work with Wells Fargo, her attorney, and the Chapter 13 Trustee to determine "how to address the

suspended payments in the long-term, including obtaining any necessary court consent and approval."

112.    The Fewell Forbearance Notice, despite implying that Ms. Fewell had failed to make two monthly mortgage payments (for April and May of 2020), which she was required by the Court's confirmation order to make, nevertheless falsely represents that it "does not constitute an amendment or modification to the Debtor's plan of reorganization."

113.    At the same time, the Fewell Forbearance Notice also indicates that Ms. Fewell was not relieved of "the responsibility to amend or modify the plan of reorganization to reflect the forbearance arrangement, if required."

114.    Ms. Fewell should not have been placed in the position of being required to act to confirm the falsity of Defendants' representations in the false forbearance notice filed in her bankruptcy case in order to prevent a motion to dismiss being filed by the Chapter 13 Trustee and being subjected to the danger of losing her home to foreclosure.

115.    On May 15, 2020, the United States Bankruptcy Court for the Western District of North Carolina entered an administrative order that requires the Chapter 13 Trustee to begin reserving the ongoing contractual mortgage payments upon receipt of a filed Notice of Forbearance.  *See In re: Administration of Conduit Mortgage Claims in Chapter 13 Cases Following Notices of Forbearance Related to COVID-19*, the United States Bankruptcy Court for the Western District of North Carolina, May 15, 2020.  As a result, Ms. Fewell's counsel had to immediately contact the Chapter 13 Trustee after receiving the Fewell Forbearance Notice to stop the automatic reservation.

116.    Ms. Fewell's credit could be negatively impacted by Defendants' filing of the Fewell Forbearance Notice, if indeed Wells Fargo was reporting to the Credit Reporting Agencies (Experian, Trans Union, Equifax) that her loan was in a forbearance status.

117.    Consequently, Ms. Fewell has been forced to pull and review her credit file to ensure that Wells Fargo was not falsely reporting her loan as being in a forbearance status.

118.    Ms. Fewell's counsel contacted Wells Fargo's attorneys at the law firm of Shapiro & Ingle, LLP to inquire about why Wells Fargo filed the Fewell Forbearance Notice.

119.    Although nobody at the Shapiro & Ingle firm responded directly to Ms. Fewell's counsel regarding their inquiry, on June 10, 2020, attorney Andrew Lawrence Vining of the law firm of Shapiro & Ingle, LLP, on behalf of Wells Fargo, filed a document captioned as a "NOTICE OF WITHDRAWAL OF DEBTOR'S REQUEST FOR MORTGAGE FORBEARANCE DUE TO THE COVID-19 PANDEMIC FOR 90 DAYS" ("Withdrawal") Fewell Docket No. 20.

120.    The Withdrawal filed by Wells Fargo, through counsel, is also false insofar as it again falsely represents that the notice related to a request by Ms. Fewell for a forbearance of her monthly mortgage payment obligations when she made no such request.

### *Beatriz Villegas-Rodriguez and Rodolfo Rodriguez*

121.    Plaintiffs Beatriz Villegas-Rodriguez and Rodolfo Rodriguez (together, "Mr. & Mrs. Rodriguez"), a married couple, are debtors in a Chapter 13 bankruptcy case (Case No. 20-10074) filed on February 25, 2020 in the United States Bankruptcy Court for the Southern District of Texas, Brownsville Division.

122.    Mr. & Mrs. Rodriguez were not behind on their monthly mortgage payments prior to filing their Chapter 13 bankruptcy and were initially paying their mortgage directly to Wells Fargo through automatic withdrawals deducted from their bank account twice monthly.

123.    On May 12, 2020, Defendants, through a non-attorney representative, filed a purported Rule 3002.1 Notice on the docket for Mr. & Mrs. Rodriguez's Chapter 13 case that falsely represents that the basis for the alleged change in Mr. & Mrs. Rodriguez's monthly mortgage payment was, "[n]otice of forbearance arrangement based on debtor's(s') request (COVID19)." Rodriguez Docket No. 32.

124.    Defendants' May 12, 2020 forbearance notice also falsely represents that Mr. & Mrs. Rodriguez and Wells Fargo had agreed to a three-month forbearance beginning with the April 1, 2020 installment.

125.    At the time the Defendants filed the false forbearance notice in Mr. & Mrs. Rodriguez's Chapter 13 case, two of the three allegedly forborne payments had already come due.

126.    Moreover, at the time Defendants filed the false forbearance notice in Mr. & Mrs. Rodriguez's Chapter 13 case, Mr. & Mrs. Rodriguez had already made both their April and May 2020 monthly mortgage payments, contrary to the representations in the Defendants' false forbearance notice.

127.    Defendants' false forbearance notice filed in Mr. & Mrs. Rodriguez's Chapter 13 case purports to have been executed, under penalty of perjury, by "Eugenia Lee Hodges" whose title is described on the false forbearance notice as, "VP Loan Documentation."

128.    Upon information and belief, Eugenia Lee Hodges is a non-attorney employee of Wells Fargo.

129.    Neither Mr. Rodriguez nor Ms. Villegas-Rodriguez requested a forbearance from Wells Fargo prior to Defendants' filing of the forbearance notice in their Chapter 13 case.

130.    The last page of the false forbearance notice Defendants filed in Mr. & Mrs. Rodriguez's Chapter 13 case states, "Wells Fargo Bank, N.A. ("Creditor\Servicer") hereby

provides notice that due to a recent financial hardship resulting directly or indirectly from the COVID-19 emergency, the Debtor (sic) has requested, and Creditor\Servicer has provided a temporary suspension of mortgage payments."

131.    Mr. & Mrs. Rodriguez's Chapter 13 plan had not yet been confirmed at the time that Defendants filed the false forbearance notice in their Chapter 13 bankruptcy case.

132.    Consequently, in reliance on Defendants' representations in the false forbearance notice filed in Mr. & Mrs. Rodriguez's Chapter 13 bankruptcy, Mr. & Mrs. Rodriguez's bankruptcy attorney prepared and filed a proposed amended Chapter 13 plan that sought to account for the payments that Defendants' false forbearance notice falsely asserted were not being made by Mr. & Mrs. Rodriguez.

133.    After filing the amended plan, Mr. & Mrs. Rodriguez's counsel learned that Mr. & Mrs. Rodriguez did not request the forbearance described in Defendants' false forbearance notice filed in Mr. & Mrs. Rodriguez's Chapter 13 case and was therefore forced to file a another amended plan that disregarded the false claims in Defendants' false forbearance notice filed in Mr. & Mrs. Rodriguez's Chapter 13 case.

134.    Mr. & Mrs. Rodriguez were alarmed and distressed to learn that Defendants had filed sworn statements with the Bankruptcy Court having jurisdiction of their Chapter 13 case, which falsely represented that Mr. & Mrs. Rodriguez had agreed to a forbearance they did not request.

135.    Mr. & Mrs. Rodriguez, who were current on their mortgage payments pre-petition and were keeping current on their post-petition mortgage payments, were also alarmed and distressed by Defendants' representation in the false forbearance notice filed in their case that the

alleged forbearance included past monthly mortgage payments that Mr. & Mrs. Rodriguez in fact had already paid.

136.    Defendants' false forbearance notice raised questions for Mr. & Mrs. Rodriguez regarding what Wells Fargo was doing with the payments they had already made, and it undermined their confidence that Defendants would properly accept and apply their subsequent mortgage payments during and after their Chapter 13 bankruptcy case.

137.    Defendants' false forbearance notice filed in Mr. & Mrs. Rodriguez's Chapter 13 case has needlessly burdened the administration of Mr. & Mrs. Rodriguez's Chapter 13 bankruptcy, wasting the time and resources of Mr. & Mrs. Rodriguez, as well as the time and resources of their bankruptcy attorney, the Chapter 13 Trustee for their case, the Bankruptcy Court, and the other parties-in-interest in their bankruptcy case, who have been forced to adjust and re-adjust to the appearance of changes to Mr. & Mrs. Rodriguez's Chapter 13 Plan, all resulting from Defendants' false filings in Mr. & Mrs. Rodriguez's bankruptcy case.

138.    Defendants' false forbearance notice filed in Mr. & Mrs. Rodriguez's Chapter 13 case also creates the potential that Wells Fargo will file needless, inaccurate motions for relief from stay at the end of the falsely alleged "forbearance" period, in order to recover the supposedly-forborne monthly payments, unless Mr. & Mrs. Rodriguez agree to enter into a post-forbearance workout agreement to cure the payments described in Defendants' false forbearance notice – all despite the fact that Mr. & Mrs. Rodriguez were current on their mortgage when they filed for bankruptcy and have remained current post-petition.

139.    On June 3, 2020, more than three weeks after Wells Fargo filed the false forbearance notice in Mr. & Mrs. Rodriguez's Chapter 13 case, an attorney from the ALAW firm,

Justin A. Swosinski, acting on behalf of Wells Fargo, contacted counsel for Mr. & Mrs. Rodriguez

by email regarding the forbearance Wells Fargo had allegedly "offered to [his] clients."

140.    Mr. Swosinski is not listed as an attorney licensed to practice law in Texas by the

State Bar of Texas.

141.    The email from Mr. Swosinski stated:

Good afternoon Mr. Limon,

I hope you are doing well. As you may know our office represents Wells Fargo
Bank in the above-referenced bankruptcy matter filed by your client.  As you may
also know, Wells Fargo has offered to your clients a forbearance of his monthly
post-petition mortgage payments. The forbearance lasts for 3 months, after which
your client will need to  bring the loan current. We understand that not all debtors
will be able make this lump sum payment, so we'd like to try and proactively reach
a resolution to cure these missed payments now, opposed to waiting until the
balance becomes due.

Please review the attached Home Preservation Documentation, which was sent by
Wells Fargo to you and your clients. Once you have reviewed it, please confirm the
forbearance is something your client has requested and remains interested in
pursuing. Thereafter, please contact me so that we can discuss the forbearance and
hopefully figure out a plan.

142.    Mr. and Mrs. Rodriguez filed an objection to Defendants' false forbearance notice

on June 19, 2020.

## V.  CLASS ALLEGATIONS

143.    Defendants and their agents have prepared, filed, and served forbearance notices in

Chapter 13 bankruptcy cases pending before bankruptcy courts across the country that falsely

assert that "due to a recent financial hardship resulting directly or indirectly from the COVID-19

emergency," the Chapter 13 debtors in whose cases the notices were filed "requested, and

Creditor\Servicer (sic) [Wells Fargo Bank, N.A.] has provided a temporary suspension of

mortgage payments."

144.    Defendants' forbearance notices filed in the putative class members' cases also falsely assert that, "[t]his short-term relief is consistent with the COVID-19 relief available under the Coronavirus Aid, Relief, and Economic Security (CARES) Act."

145.    Forbearance notices prepared, filed, and served by Defendants in Plaintiffs' Chapter 13 cases purport to have been executed by non-attorneys, who are, upon information and belief, Wells Fargo employees or other individuals authorized by Wells Fargo to execute and file forbearance notices on its behalf with Bankruptcy Courts across the United States.

146.    Defendants' false forbearance notices filed by Wells Fargo's non-attorney personnel using the Bankruptcy Courts' ECF systems are either filed on the Bankruptcy Courts' dockets for borrowers' Chapter 13 bankruptcy cases as "Notices" or they are filed on the Bankruptcy Courts' dockets or claims registers using a modified version of Official Form 410S1 for Rule 3002.1 Notices of Mortgage Payment Changes.

147.    The false forbearance notices that Defendants prepare, file, and serve in connection with the putative class members' Chapter 13 cases also falsely indicate that the (bogus) forbearance period includes one or more payments that came due prior to the date that such notices were filed.

148.    Nothing in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the CARES Act authorizes Defendants to use non-attorney personnel to file forbearance notices on Bankruptcy Courts' dockets for borrowers' Chapter 13 cases without attorney review and approval.

149.    Nothing in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the CARES Act authorizes Defendants to file Rule 3002.1 Notices of Mortgage Payment Change using Official Form 410S1 as a means of disclosing alleged forborne payments that came due prior to the filing of such notices.

150.     Nothing in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, or the CARES Act authorizes Defendants to modify Official Form 410S1 in connection with their filing of Rule 3002.1 Notices of Mortgage Payment Change.

151.     The Rule 3002.1 Notices of Mortgage Payment Change that falsely claim that class members requested forbearance of their mortgage loans are signed by Wells Fargo representatives under penalty of perjury.

152.     The Wells Fargo representatives who sign and file the Rule 3002.1 Notices of Mortgage Payment Changes claiming, falsely, that class members requested forbearance of their mortgage loans have no basis for asserting that the information provided in the notices are "true and correct to the best of [such representatives'] knowledge, information, and reasonable belief."

153.     Upon information and belief, Wells Fargo has no policies and/or procedures in place to prevent its representatives from filing false notices of forbearance in Chapter 13 cases of borrowers who never requested the forbearances described in the notices, whether such notices are filed on the Bankruptcy Courts' dockets or on the claims registers for such borrowers' Chapter 13 cases. Alternatively, whatever policies and procedures Wells Fargo does maintain to prevent such false filings are either inadequate or are not enforced by Wells Fargo in a manner that is reasonably calculated to prevent Wells Fargo from filing false notices of forbearance for loans of borrowers who did not request forbearance.

154.     Upon information and belief, InfoEx is compensated by Wells Fargo for the false forbearance notices it serves on behalf of Wells Fargo.

155.     Upon information and belief, ALAW is compensated by Wells Fargo for legal services performed in connection with effectuating loan workout options for borrowers whose loans have been placed into forbearance.

156.    Wells Fargo is also compensated by the various federal agencies on whose behalf it services borrowers' loans when it files forbearance notices and when it completes loan workout options with borrowers whose loans have been placed into forbearance pursuant to the CARES Act.

157.    With respect to loans Wells Fargo services for Fannie Mae or Freddie Mac, for each loan placed into forbearance that Wells Fargo subsequently modifies in accordance with Fannie Mae and Freddie Mac's matrix for workout options, Wells Fargo will receive an incentive fee of up to $1,000 for workout options entered into on or after July 1, 2020. *See* Fannie Mae Lender Letter (LL-2020-09) dated June 10, 2020, available at https://singlefamily.fanniemae.com/media/23091/display.

158.    Published FHA procedures, rules, and regulations also provide that servicers of FHA loans may receive incentive fees for successfully implementing workout options following a forbearance period.

159.    Wells Fargo also receives servicing income for the loans it services, and Plaintiffs are informed and believe and therefore allege that Wells Fargo is therefore incentivized to modify its customers' mortgage loans following a CARES Act forbearance in a way that extends the loan's term and lowers the borrower's monthly mortgage payment in order to prevent "run off" of loan servicing rights, which occurs when borrowers sell their homes or refinance their mortgages.  Thus, upon information and belief, Wells Fargo uses these false forbearance notices to increase its mortgage servicing income by lowering borrowers' monthly mortgage payments in order to keep them paying on their existing (albeit modified) mortgage loans.

160.    Wells Fargo is also entitled to reimbursement from Fannie Mae, Freddie Mac, and the other federal agencies on whose behalf Wells Fargo services mortgage loans, for attorneys'

fees, at pre-determined flat-fee amounts, incurred in connection with bankruptcy-related legal services performed by Wells Fargo's attorneys, including, among others, services performed by attorneys associated with ALAW.

161.    Wells Fargo has previously been admonished for engaging in similar conduct involving the filing of Rule 3002.1 Notices of Mortgage Payment Change that falsely asserted that borrowers had agreed to mortgage loan modifications that the borrowers knew nothing about, including in the United States Bankruptcy Court for the Western District of Pennsylvania and in the United States Bankruptcy Court for the Western District of North Carolina.  In *In re Eyer*, the bankruptcy court for the Western District of Pennsylvania entered an order striking a notice of mortgage payment change related to a modification that the debtor did not request because the notice had "nothing to do with the [d]ebtor's current obligations under its note and/or mortgage with Wells Fargo."  *In re Eyer,* Case No. 12-70985, Memorandum Order Striking Notice of Payment Change, Docket No. 93 (Bankr. W.D. Penn. Dec. 30, 2015).  **Exhibit C**.  The court also noted that such a procedure was not appropriate for trial modifications, and required the filing of a motion to "insure that such items are not merely entered into by default – and without meaningful opportunity for debtors to seek guidance and counsel from their attorneys..."  *Id.*

162.    Further, Chief Bankruptcy Judge Beyer, in the Western District of North Carolina, entered an order in *In re Allen* regarding Wells Fargo's practice of filing Rule 3002.1 Notices of Monthly Mortgage Payment Change that falsely stated that borrowers' loans were subject to modifications that such borrowers had not requested and knew nothing about, a practice that Judge Beyer described as, "beyond the pale of due process."  *In re Allen*, Case No. 13-31034, Order

Sustaining Objection to Notice of Mortgage Payment Change, Docket No. 29 (Bankr. W.D. N.C.

Sept. 19, 2016).[1]

163.     Indeed, in the Western District of Virginia alone, Plaintiffs' counsel have identified

at least nine false forbearance notices Defendants have prepared, executed, filed, and served in

debtors' Chapter 13 bankruptcy cases, including, among others, in the cases of two of the four

proposed class representatives for this case, those of Estes and Harlow.

164.     As described above, the national scope of this problem is demonstrated by the fact

that similar false notices of forbearance were also prepared, executed, filed and served by

Defendants in the Southern District of Texas and in the Western District of North Carolina, in the

cases of the other two proposed class representatives for this case, Mr. and Mrs. Rodriguez and

Ms. Fewell.  Such notices have also been filed in cases pending in the Eastern and Middle Districts

of North Carolina.

165.     Upon information and belief, Defendants have engaged in substantially the same

conduct, filing false forbearance notices in Chapter 13 cases of borrowers who never requested a

forbearance, in other cases in United States Bankruptcy Courts nationwide, including but not

limited to bankruptcy courts in New Jersey, Louisiana, and the Southern District of Texas.

166.     Defendants' false forbearance notices are systemically harmful to the purposes and

administration of Chapter 13 bankruptcy in this country.

167.     For debtors like Plaintiffs Harlow, Estes, and Fewell, whose plans were confirmed

long before the false and unauthorized notices were filed, the notices disrupt Trustees'

---

[1] Judge Beyer also entered an order sustaining a debtor's objection to a similar notice of mortgage payment change regarding a modification the debtor did not request, requiring Wells Fargo to pay the debtor's counsel's fees incurred for filing the objection.  *See  In re Roman*, Case No. 15-31462, Order Sustaining Objection to Notice of Mortgage Payment Change, Awarding Fees and Expenses to Debtor's Counsel to be Paid by Wells Fargo, and Setting Compliance Hearing for October 25, 2016, Docket No. 34 (Bankr. W.D. N.C. Oct. 14, 2016).

administration of their plans and needlessly subject the debtors' budgets to unwarranted scrutiny by creditors and Trustees.

168.    The problem is similar for debtors, including Mr. & Mrs. Rodriguez, whose plans had not yet been confirmed when such notices were filed, given that these forbearances present a major change in the debtor's apparent financial circumstances, which, at a minimum poses questions and requires needless investigation and "proof" that the false notices are, in fact, false.

169.    By filing these false forbearance notices, Defendants are forcing debtors and/or their counsel to take affirmative action in order to avoid changes to their mortgage loans and their bankruptcy cases that they never requested.  As such, Defendants are actively creating uninvited and unnecessary work and risk for debtors and/or their counsel, which results in a practical and financial burden on debtors and their lawyers to take the time to address these payment change notices, generating unnecessary attorneys' fees for debtors (and potential malpractice exposure for debtors' attorneys if they do not act promptly) as a result.

170.    This practice also creates additional unnecessary confusion and work for Chapter 13 Trustees in "conduit" cases, i.e. those cases in which the Trustee is responsible under the terms of the debtor's confirmed plan to make payments both to cure pre-petition mortgage arrearages and to maintain the debtor's post-petition mortgage obligations.

171.    The purpose of Rule 3002.1 is to create a streamlined process for administration of the debtor's post-petition mortgage obligations, meaning Chapter 13 Trustees are heavily dependent on the servicers who file Rule 3002.1 notices to file them correctly, so that debtors' accounts are brought current at the time of their discharge upon completion of their Chapter 13 plans, as the Bankruptcy Code intends.

172.    By filing patently false forbearance notices, Trustees are forced to carefully scrutinize and investigate all payment change notices to ensure they do not involve unapproved and unwanted forbearances. Whereas these notices would ordinarily be implemented automatically, given the uncertainty Defendants' false forbearance notices introduce, the entire payment change notice implementation process now requires verification. This is the opposite of the intended purpose of Rule 3002.1, which was implemented to provide a streamlined and uniform mechanism for acknowledging and processing ordinary contractual changes to monthly mortgage payment amounts, such as for routine escrow and interest rate adjustments.

173.    Because Wells Fargo's wrongful conduct is widespread and uniform, this case should be certified for class action treatment pursuant to Fed. R. Bankr. P. 7023(a) and 7023(b)(2) and (3).

174.    The class Plaintiffs seek to represent consists of all individuals in the United States:

- who currently are in a Chapter 13 bankruptcy case or were formerly in a Chapter 13 bankruptcy case, and

- in whose Chapter 13 case Wells Fargo filed a forbearance notice, whether as a "notice" filed on the Court's docket, or as a "Rule 3002.1 Notice of Mortgage Payment Change" filed on the Court's docket or claims register, which falsely represents that the debtor(s) in such case requested a forbearance of their monthly mortgage payment obligation as a result of financial hardships associated with the COVID-19 crisis.

175.    The class does not include the Judges of this Court, the Judges of the United States Courts of Appeals, or the Justices of the United States Supreme Court.

176.  <u>Numerosity</u> – The class is so numerous, with class members throughout the country, that joinder of all class members is impracticable.  A class action is the only feasible method of adjudicating the rights of the affected borrowers, and, absent allowance of a certification of a class action, a failure of justice will result.  Plaintiffs include debtors with cases filed in three districts in three different states. Investigation of Defendants' forbearance notice practices in jurisdictions across the United States indicates that Defendants are filing these notices in many more states. The number of putative class members that have already been identified is sufficient to justify further discovery to establish the numerosity element of Rule 7023, as there are likely many more unidentified putative class members throughout the country.

177.  <u>Commonality</u> – The questions of law and fact common to all class members that predominate over those pertaining to individual class members include, but are not limited to, whether Wells Fargo engaged and engages in the practices complained of and whether such actions violate the Bankruptcy Code and Rules, and other federal law as alleged.  Specifically, the common question of law is whether Defendants' practice of filing false forbearance notices in the bankruptcy courts of the United States constitutes an abuse of process.  A common question of fact is whether Defendants have filed these false forbearance notices in Chapter 13 debtors' cases around the country.

178.  <u>Typicality</u> - Plaintiffs' claims are typical of the claims of the class members.  All are based on the same factual and legal theories.  The Plaintiffs have been subjected to the same misconduct as the members of the proposed class.

179.  <u>Adequacy of representation</u> – Plaintiffs will fairly and adequately protect the interests of all class members.  Plaintiffs understand their responsibilities to the class as a whole, and they understand that Defendants' false forbearance notices threaten to undermine the

administration of their bankruptcy cases and the other class members' Chapter 13 cases nationwide. Plaintiffs have retained capable counsel experienced in state and federal consumer law and consumer class-action litigation, and consumer bankruptcy law class-action litigation.  Neither Plaintiffs nor their counsel have any conflicts that would interfere with the vigorous prosecution of this action.

180.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy in that:

(a) the class necessarily consists of persons (Chapter 13 debtors) in unfavorable economic circumstances who are not able to pay to maintain individual actions against Defendants,

(b) many class members lack the sophistication to recognize that Defendants' actions are unlawful and to retain litigation counsel,

(c) many class members have acceded or will accede to Defendants' unlawful conduct, and

(d) there is no reason that the courts should be burdened with multiple lawsuits challenging Defendants' facially improper practice of filing false forbearance notices in borrowers' Chapter 13 bankruptcy cases.

181.    Finally, Plaintiffs would show the Court that Defendants, in preparing, executing, filing, and serving the false forbearance notices challenged herein, have acted and refused to act on grounds generally applicable to the class as a whole.

## VI.  CAUSES OF ACTION

### COUNT I
### (UNAUTHORIZED PRACTICE OF LAW)

182.    Plaintiffs repeat and reallege the allegations in this complaint.

183.    By permitting non-attorney personnel and agents to prepare, execute, file and serve objectively false forbearance notices on the dockets of Chapter 13 cases maintained by bankruptcy courts around the country, Defendants and their representatives have engaged in the unauthorized practice of law, in violation of Pt. 6 § I, Rules of Supreme Ct. of Va., which provides, in pertinent part:

1.  **PROHIBITION AGAINST UNAUTHORIZED PRACTICE OF LAW:** No non-lawyer shall engage in the practice of law in the Commonwealth of Virginia or in any manner hold himself or herself out as authorized or qualified to practice law in the Commonwealth of Virginia except as may be authorized by rule or statute. The term "non-lawyer" means any person, firm, association or corporation not duly licensed or authorized to practice law in the Commonwealth of Virginia. Any person or entity who practices law without being licensed or otherwise authorized to practice law shall be guilty of a Class 1 misdemeanor. Va. Code § 54.1-3904.
2.  **GENERAL DEFINITION**: A person or entity engages in the practice of law when representing to another, by words or conduct, that one is authorized to do any of the following:
A.  Undertake for compensation, direct or indirect, to give advice or counsel to an entity or person in any matter involving the application of legal principles to facts.
B.  Select, draft or complete legal documents or agreements which affect the legal rights of an entity or person.
C.  Represent another entity or person before a tribunal.
D.  Negotiate the legal rights or responsibilities on behalf of another entity or person.

184.    By permitting non-attorneys to execute and file forbearance notices on the dockets and claims registers of Bankruptcy Courts without attorney supervision, and without any basis in law or fact, Defendants engaged in the unauthorized practice of law.

185.    Defendants' unauthorized practice of law had an impact on Plaintiffs' and the class members' Chapter 13 cases, as well as the bankruptcy court, the Chapter 13 trustees, and other parties in interest in such cases.

186.    As alleged herein, Defendants' unlicensed practice of law has damaged Plaintiffs and the other class members.

187.    Defendants' are sophisticated, regular participants in the bankruptcy process that routinely hire counsel to represent them in connection with borrowers' Chapter 13 bankruptcy cases.

188.    Defendants are also recidivists who have a long history of abusing the provisions of the Bankruptcy Code and Rules and of flouting established rules and procedures of Bankruptcy Courts around the nation in connection with their servicing of loans of borrowers in Chapter 13 bankruptcy.

189.    Given their sophistication and history of misconduct, Defendants' use of non-attorneys to file false forbearance notices constitutes a particularly reprehensible and willful kind of unauthorized practice of law, such that substantial punitive sanctions are necessary and appropriate to punish Defendants for engaging in such conduct and to deter Defendants and their industry peers from engaging in similar practices in the future.

## COUNT II
### (VIOLATION OF FED. R. BANKR. P. 3002.1)

190.    As described in this complaint, by filing false forbearance notices using Rule 3002.1 Notices of Monthly Mortgage Payment Change and official form 410S1, Defendants are needlessly disrupting Plaintiffs' and the other class members' Chapter 13 bankruptcy cases in an outrageous and damaging manner.

191.    Defendants have also violated Fed. R. Bankr. P. 3002.1(b)'s requirement that mortgage payment change notices be filed more than 21 days before the effective date of the payment change, by filing forbearance notices that indicate that the borrower's payments for prior months were forborne, after Plaintiffs and other class members had already made their regular monthly mortgage payments for those months.

192.     Defendants' abuse of Fed. R. Bankr. P. 3002.1 has damaged Plaintiffs and caused them to incur attorneys' fees.

193.     Defendants' conduct as described herein is part of a general pattern and practice of conduct by Defendants that is either expressly authorized by Defendants' policies and procedures, or, to the extent not authorized, such conduct is either not prohibited by such policies and procedures, or the policies and procedures Defendants maintain to prevent such conduct are so deficient and/or so completely unenforced by Defendants as to render them meaningless.

194.     Pursuant to Fed. R. Bankr. P. 3002.1(i), Defendants' failure to comply with Fed. R. Bankr. P. 3002.1(b) allows the Court, after notice and hearing, to award Plaintiffs appropriate relief, including actual damages, punitive damages, reasonable expenses, and attorneys' fees caused by Defendants' abuse of Rule 3002.1.

195.     Plaintiffs respectfully pray the Court award them and the class such relief.

## COUNT III
### (OBJECTION TO FALSE FORBEARANCE NOTICES)

196.     Plaintiffs repeat and reallege the allegations in this complaint.

197.      Plaintiffs Harlow, Estes, and Rodriguez/Villegas-Rodriguez have filed objections to Wells Fargo's false forbearance notices, which Plaintiffs incorporate herein by this reference and are attached hereto as **Exhibit D.**

198.     Plaintiffs object to the false forbearance notices, among other things, because the notices falsely represent that Plaintiffs requested a forbearance of their monthly mortgage payment obligations, including for months in which Plaintiffs have in fact already made their monthly mortgage payments, either directly to Defendants or to the Chapter 13 Trustees administering their cases, as provided in their confirmed Chapter 13 plans.

199.     Plaintiffs respectfully request that the Court sustain Plaintiffs' objection to the false forbearance notices prepared, executed, filed, and served by Defendants.

## COUNT IV
## (VIOLATION OF THE AUTOMATIC STAY)

200.     Plaintiffs repeat and reallege the allegations in this complaint.

201.     Defendants' actions in this case constitute willful violations of the automatic stay as set forth in 11 U.S.C. § 362(a)(3) and (6).

202.     Defendants had actual knowledge that Plaintiffs were debtors in pending Chapter 13 cases and that the automatic stay was in effect at the time it took the actions described herein.

203.     Defendants violated the automatic stay by preparing, executing, filing, and serving false forbearance notices that impacted the Plaintiffs' and other class members' ability to confirm their Chapter 13 bankruptcy plans and/or to perform according to the terms of the plan confirmation orders in Plaintiffs' and other class members' Chapter 13 cases, and Defendants did so by filing false forbearance notices, without obtaining relief from the automatic stay or Plaintiffs' prior consent.

204.     By filing the false forbearance notices, Defendants effectively were unilaterally modifying Plaintiffs' and other class members' loans and confirmed Chapter 13 plans, frustrating the Bankruptcy Courts' and Chapter 13 Trustees' administration of the Plaintiffs' and other class members' Chapter 13 cases.

205.     Defendants' conduct as described herein is part of a general pattern and practice of conduct by Defendants, which is either expressly authorized by, or not specifically prohibited by, their policies and procedures, or which, if unauthorized or prohibited by such policies and procedures, is conduct that in practice is permitted and/or which policies and procedures are

insufficient to ensure against the filing of the false forbearance notices as exemplified by the false

forbearance notices filed in Plaintiffs' Chapter 13 cases.

206.    Plaintiffs and the members of the class were injured by Defendants' violation of

the automatic stay as set forth in this complaint.

207.    Defendants' acts constitute willful violations of the automatic stay.  Defendants

knew the automatic stay was applicable to Plaintiffs and the members of the class, Defendants'

actions were intentional, and Defendants' acts alleged herein violated the provisions and purposes

of the Bankruptcy Code.

208.    As a result of the above violations of 11 U.S.C. § 362, and pursuant to 11 USC §

362(k) of the Bankruptcy Code Defendants are liable to Plaintiffs and the class for their actual

damages, punitive damages, and reasonable attorneys' fees and costs resulting from Defendants'

willful stay violations.

## COUNT V
### (11 U.S.C. § 105 (a) ABUSE OF PROCESS/INHERENT AUTHORITY)

209.    Plaintiffs repeat and reallege the allegations in this complaint.

210.    The process utilized by Defendants in this case has impacted the orderly

administration of the bankruptcy process.

211.    Plaintiffs and other class members sought the protection of the Bankruptcy Code to

prevent the foreclosure of their homes and/or as a means of rehabilitating to their financial affairs.

212.    The ability of debtors in Chapter 13 bankruptcy to emerge from bankruptcy having

cured and maintained their mortgage loans pursuant to § 1322(b)(5) of the Bankruptcy Code is of

critical importance both to consumer debtors and creditors, as it allows debtors to protect their

homes while giving creditors a degree of certainty and reasonable expectations regarding the

anticipated distributions that will be paid out, based on the largest budget item in most debtors'

Chapter 13 cases, their home mortgage payment.

213.    In filing any document with the bankruptcy courts affecting a debtor's mortgage

obligations, responsible creditors must consider the specific facts and details of the borrowers'

circumstances and affirmatively conclude that such filing is actually necessary and warranted.  By

filing false forbearance notices in Plaintiffs' Chapter 13 bankruptcy cases, Defendants have failed

to fulfill this duty.

214.    When mortgage creditors and their agents, like the Defendants herein, file

documents using Official Form 410S (3002.1 Notices), which are submitted under penalty of

perjury, or when they file documents on bankruptcy courts' dockets for debtors' Chapter 13 cases,

courts, debtors, trustees, and other creditors participating in debtors' Chapter 13 cases are entitled

to expect and insist that facts asserted by such mortgage creditors and/or their agents in any such

notices and/or docket filings have been carefully researched and, to the best of the creditor's

knowledge, are not only true, but are complete enough to be an accurate characterization.

215.    Official Form 410S states: "I declare under penalty of perjury that the information

provided in this claim is true and correct to the best of my knowledge, information, and reasonable

belief."

216.    As set forth above, Defendants' forbearance notices are materially false because

Plaintiffs did not request that Defendants provide them a forbearance of their monthly mortgage

payment obligations.

217.    Where, as here, a creditor's policies or practices interfere with the debtor's rights, it

is the Court's right and duty to prevent such conduct.  *See In re Lyon & Reboli, Inc.*, 24 B.R. 152,

154 (Bankr. E.D.N.Y. 1982) (noting obligation of court under § 105 to pass upon propriety of

salaries of insiders where there is potential for, and the prima facie appearance of, abuse); *In re Panem*, 352 B.R. 269, 278 (Bankr. D. Colo. 2006) (reasoning that if court failed to review terms and conditions of submitted stipulation, it would abdicate its duties); *In re Earl*, 140 B.R. 728, 741 (Bankr. N.D. Ind. 1992) (using § 105(a) where "Court must preserve the integrity of the Bankruptcy system and prevent the abusive use of the Bankruptcy system invoked only to thwart the legitimate rights of creditors, and preclude an unwarranted congestion of its docket by enjoining the Debtor from again filing another chapter 13 case in the near future."); *In re Fasano*, 85 B.R. 639 (Bankr. S.D. Fla. 1988) (holding debtors in contempt, citing "Court's duty under Section 105 to protect the bankruptcy system from abuse.")

218.    Defendants' actions—in filing objectively false forbearance notices—constitute an abuse of process under § 105(a).

219.    Section 105(a) states that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title ... or to prevent an abuse of process."

220.    Under § 105, bankruptcy judges have broad authority to take necessary or appropriate actions to prevent an abuse of the bankruptcy process, including imposition of sanctions.

221.    Situations where courts have relied on § 105(a) for authority to sanction conduct, or to prevent an abuse of the judicial process have largely involved cases in which courts found that the filing of false documents—which disrupted the bankruptcy process and prejudiced debtors—constituted an abuse of process. *See, e.g.*, *Rojas v. Citi Corp Trust Bank FSB* (*In re Rojas*), No. 07-70058, 2009 WL 2496807, at *3, 9 (Bankr. S.D. Tex. Aug. 12, 2009) (filing a false proof of claim in contravention of § 501 and Rule 3001 would constitute an abuse of process); *In*

*re Schuessler*, 386 B.R. 458, 488–489 (Bankr. S.D.N.Y. 2008) (holding that abuse of process arises

when a creditor revokes a privilege granted to a debtor without notice, solely because of their

bankruptcy filing, and the creditor's action disrupts the bankruptcy process and unnecessarily

prejudices the debtor); *Brannan v. Wells Fargo Home Mortgage, Inc.* (*In re Brannan*), 485 B.R.

443, 454 (Bankr. S.D. Ala. 2013) (holding that the submission of fraudulent affidavits in support

of motions for relief would constitute abuse of process); *In re Fagan*, 376 B.R. 81, 82 (Bankr.

S.D.N.Y. 2007) (imposing sanctions based on fact that debtors must not be subjected to risk of

foreclosure and loss of their homes on basis of false certifications of post-petition defaults); *In re

Haque*, 395 B.R. 799 (Bankr. S.D. Fla. 2008) (imposing sanctions pursuant to § 105(a) for filing

false stay relief affidavits claiming entitlement to default interest). *Allen v. Fitzgerald, Trustee for

Region Four*, 2019 WL 6742996 (W.D. Va. Dec. 11, 2019) (affirming *In re Williams*, 2018 WL

832894 (Bankr. W.D. Va. Feb. 12, 2018)).

222.     Defendants' actions, or lack thereof, in filing false forbearance notices and/or in

failing to ensure that the forbearance notices they were filing were not false prior to filing them,

taken together, constitute a maneuver that has undermined the integrity of the bankruptcy system,

disrupted the bankruptcy process, and, as such, were a deliberate abuse of the judicial process.

§105(a) of the Bankruptcy Code is an appropriate mechanism to punish and deter Defendants'

misconduct.

223.     Plaintiffs and the class have been damaged by Defendants' abuse of the Bankruptcy

Code, Rules, and processes, which has caused them to incur damages, including attorneys' fees.

224.     Accordingly, Plaintiffs ask this Court to find that Defendants' actions in filing false

forbearance notices constitute an abuse of process.

225.     Based upon such findings, and under the Court's inherent powers and the authority set forth in 11 U.S.C. § 105(a), Plaintiffs seek an award of sanctions and/or punitive damages, declaratory and injunctive relief, actual damages, and attorneys' fees and costs.

226.     Accordingly, under § 105 and/or the Court's inherent authority, Defendants should be sanctioned in an appropriate amount and made to pay Plaintiffs' reasonable attorneys' fees for bringing this action.

## COUNT VI
## (CONTEMPT)

227.     Plaintiffs repeat and reallege the allegations in this complaint.

228.     As outlined in the preceding counts and the preceding factual allegations, Wells Fargo has violated and breached Plaintiffs' Chapter 13 plans and the orders confirming the plans.

229.     Title 11 U.S.C. § 1322(b)(5) allows a Chapter 13 debtor to cure deficiencies and maintain regular monthly mortgage payments.  Section 1327 of Title 11 of the United States Code provides as follows: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

230.     Plaintiffs' confirmed Chapter 13 plans contain specific provisions regarding the amount and application of funds received from both the Chapter 13 Trustees and the Plaintiffs during the pendency of their Chapter 13 case.  By filing Rule 3002.1(b) payment change notices instructing the Trustees to apply funds earmarked for Plaintiffs' post-petition mortgage payments in a manner that would prevent Plaintiffs' mortgage loan from becoming current upon emerging from bankruptcy, Wells Fargo violated §§ 1322(b)(5) and 1327, and other provisions of the Code and Rules, the Plaintiffs' Chapter 13 plans, and the orders confirming the plans.

231.    Wells Fargo's acts were a willful abuse of the Bankruptcy Code and Rules.  Wells Fargo knew of the existence of these provisions, its acts were intentional, and the acts alleged herein violated the provisions and purposes of the Code and Rules.

232.    The actions of Defendants show that it is their policy and procedure to ignore the directives of the nation's bankruptcy courts and the Bankruptcy Code and Rules.

233.    Accordingly, Plaintiffs ask this Court to find Defendants in contempt and in violation of the Bankruptcy Code's and Rules' provisions and their purposes pursuant to the Court's inherent powers and pursuant to its powers under 11 U.S.C. § 105(a).  Plaintiffs also ask that the Court use its inherent and statutory powers to award sanctions and actual damages, punitive damages, as well as reasonable attorneys' fees and costs, and issue injunctive relief.

## COUNT VII
## (FRAUD ON THE COURT)

234.    Plaintiffs repeat and reallege the allegations in this complaint.

235.    Defendants made material representations in their false forbearance notices filed with the Court, which have needlessly and detrimentally interfered with the administration of Plaintiffs' and the other class members' Chapter 13 cases, which impacts the Court, the Chapter 13 Trustee, and all of the Plaintiffs' creditors, as well as Plaintiffs and their counsel.

236.    Defendants' false forbearance notices falsely represent that borrowers in Chapter 13 bankruptcy (a) requested and received Wells Fargo's agreement to allow them to miss monthly mortgage payments that they were required to pay under the terms of their confirmed plans, or which were expected under their proposed and not-yet-confirmed plans, schedules, and statements filed with the Bankruptcy Court and relied upon by parties in interest to evaluate such proposed plans' feasibility prior to confirmation, and (b) they also falsely represent and/or imply that the Plaintiffs and other class members did not make monthly mortgage payments that came due prior

to the filing of the false forbearance notices, when Plaintiffs and other class members in fact had made the payments described in the forbearance notices.

237.    Defendants' false representations in the false forbearance notices were material because they either did in fact cause, or would have, but for the diligence of Plaintiffs' counsel, caused (a) denial or delay of confirmation of then unconfirmed Chapter 13 plans, and (b) Plaintiffs' Chapter 13 bankruptcy plans to be modified without prior disclosure, Court approval, or Plaintiffs' consent.

238.    Defendants' false representations in the false forbearance notices were material because they either did in fact cause, or would have, but for the diligence of Plaintiffs' counsel, caused Plaintiffs to go into default or would increase Plaintiffs' default under the unmodified terms of their mortgage loans.

239.    When Defendants made the material false representations in the false forbearance notices filed with Bankruptcy Courts across the United States, Defendants (i) knew that the material representations were false, or (ii) made the material misrepresentations recklessly without any knowledge of their truth and as a positive assertion.

240.    Defendants filed and served the false forbearance notices with the knowledge and intent that they would be acted upon by Chapter 13 Trustees and the Bankruptcy Courts.

241.    The Plaintiffs, the Court, other participants in the bankruptcy process, and the bankruptcy process have been damaged by Defendants' fraud on the Court.

242.    The Court can, and should, use its inherent and 11 U.S.C. § 105 authority to sanction Defendants for this fraudulent conduct.

## COUNT VIII
## (ATTORNEYS' FEES)

243.    Plaintiffs repeat and reallege the allegations in this complaint.

244.    Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiffs by violating or obstructing confirmation of Plaintiffs' Chapter 13 plans, Rule 3002.1, and the Bankruptcy Code and Rules as described herein.

245.    Moreover, Plaintiffs have been forced to retain legal counsel, who have incurred reasonable and necessary attorneys' fees on their behalf.  Such fees are properly taxed against Defendants by virtue of their flagrant violations of the Chapter 13 provisions of the Code, Fed. R. Bankr. P. 3002.1, Plaintiffs' Chapter 13 plans, the automatic stay in 11 U.S.C. § 362(a), and Defendants' gross abuse of the bankruptcy process.  The Court may, and on these facts the Court should, award Plaintiffs their attorneys' fees as against Defendants pursuant to the Court's inherent and § 105(a) authority.

## VIII.  REQUEST FOR DECLARATORY RELIEF

246.    Plaintiffs repeat and reallege the allegations in this complaint.

247.    As outlined in the preceding counts and the preceding factual allegations, Defendants have violated Fed. R. Bankr. P. 3002.1 and 4001(c), and 11 U.S.C. §§ 362, 364, 1322(b)(5), 1327, and 1329, and has committed a gross abuse of process.  Plaintiffs seek a declaration that Defendants' conduct as described herein violates 11 U.S.C. §§ 364, 1322(b)(5), 1327, and 1329, Fed. R. Bankr. P. 3002.1 and 4001(c) and constitutes a gross abuse of process.

## IX.  REQUEST FOR PRELIMINARY INJUNCTION

248.    Plaintiffs repeat and reallege the allegations in this complaint

249.    Plaintiffs and the class are entitled to a preliminary injunction, pursuant to Fed. R. Civ. P. 65 and 11 U.S.C. § 105(a), enjoining Defendants from engaging in the acts and practices described herein, including enjoining Defendants from

- filing forbearance notices that falsely state that Chapter 13 debtors have requested and received mortgage forbearances when such debtors did not request forbearance of their mortgage payment obligations;

- failing to accept and apply monthly mortgage payments tendered by Plaintiffs and the other class members for months included in the false forbearance notices;

- seeking to engage Plaintiffs and/or other class members regarding workout options based on payments described in the false forbearance notices;

- seeking or obtaining relief from the automatic stay in bankruptcies of Plaintiffs and other class members with respect to payments described in the false forbearance notices without first confirming that such payments were not actually made;

- foreclosing on Plaintiffs' or class members' homes based on defaults that include allegedly missed monthly mortgage payments described in the false forbearance notices without first confirming that such payments were not actually made; and

- making false assertions to class members' attorneys through email or otherwise.

250.    Plaintiffs assert that, absent an injunction to prevent such misconduct, Defendants and their attorneys, agents, vendors, and/or other representatives will continue to wrongfully file false forbearance notices without the consent of Plaintiffs and other class members, in direct violation of the Bankruptcy Code and Rules.

251.    There is a substantial likelihood that Plaintiffs will prevail on the merits, courts have already sanctioned Wells Fargo for similar misconduct. *See Campbell v. Countrywide Home*

*Loans, Inc. (In re Campbell)*, 545 F.3d 348, 356 n. 1 (5th Cir. 2008). Bankruptcy courts in North Carolina and Pennsylvania have already disapproved of Wells Fargo's filing of Rule 3002.1 Notices of Mortgage Payment Change that falsely represented that debtors had agreed to mortgage modifications they did not know about or request, and nothing in the Bankruptcy Code or Rules suggests that Defendants' filing of false forbearance notices is even arguably permissible.

252.    The harm faced by the Plaintiffs and the class outweighs any "harm" that will be sustained by Defendants if the preliminary injunction were granted. The panoply of the harms to debtors (and the entire bankruptcy system) are described above. These far outweigh Defendants' interest in profiting in connection with the filing of false forbearance notices.

253.    Issuing a preliminary injunction will not adversely affect the public interest but rather will enhance it. Wells Fargo's actions eviscerate the purposes of the Bankruptcy Code and the administration of Chapter 13 proceedings, which are intended to provide the debtors the ability to cure their arrearages and receive a "fresh start" after the successful completion of their plans. Wells Fargo's actions broadcast (again) its perception that it has impunity for conduct that overtly disobeys the provisions of the United States Bankruptcy Code and court orders. Wells Fargo's actions erode public confidence in the bankruptcy courts' ability to ensure that debtors receive the "fresh start" they earn by completing their three-to-five-year Chapter 13 plan payments, a process that requires extreme sacrifice on their part.

254.    The public has the right to expect that the courts will enforce the provisions of the Bankruptcy Code and will not allow lenders to illegally undermine and even destroy debtors' right to successfully complete their Chapter 13 plans and cure their mortgage arrears through their Chapter 13 plan. Even though the Court should balance the threatened injury to Plaintiffs against any harm to the defendant, when balancing the hardships of the public interest against a private

interest, the public interest should receive greater weight.  *See FTC v. World Wide Factors*, 882 F.2d 344, 346-47 (9th Cir. 1989).  The substantial adverse effects of Defendants' false forbearance notices militate strongly in favor of this Court issuing a preliminary injunction.

255.   The posting of a bond is not a prerequisite to the issuance of a preliminary injunction in this case because Defendants cannot demonstrate that preserving the *status quo* will cause it cognizable economic harm.  *See FTC v. Southwest Sunsites, Inc.*, 665 F. 2d 711, 714 n.1 (5th Cir. 1982) (ruling that a temporary restraining order or preliminary injunction may be granted without bond).  Defendants' filing of the false forbearance notices alters the *status quo*.  The Plaintiffs' and class members' plans created a *status quo* whereby the Plaintiffs and the class members address their mortgage deficiency through their plans and orders confirming their plans. The *status quo* is the Bankruptcy Code and Rules, and the class members' proposed and confirmed Chapter 13 plans, which require that debtors obtain bankruptcy court approval prior to obtaining credit.  Since the Plaintiffs and class members are continuing to attempt to pay pursuant to their plans, the posting of security is unnecessary.

256.   In addition, or alternatively, the Court can issue a preliminary injunction to prevent Wells Fargo from taking the actions Plaintiffs and the class seek to enjoin based on its 11 U.S.C. § 105(a) authority.  Plaintiffs and class members therefore request that the Court use its 11 U.S.C. § 105(a) authority to issue a preliminary injunction enjoining Defendants from engaging in the acts set forth above during the pendency of this case.

257.   Plaintiffs ask the Court to set this application for preliminary injunction for hearing if the parties are unable to agree to a preliminary injunction and, after hearing the request, issue a preliminary injunction against Wells Fargo enjoining it from the actions set out above.

## X.  REQUEST FOR PERMANENT INJUNCTION

258.   Plaintiffs reallege and incorporate by reference the above-numbered paragraphs.

259.   Plaintiffs and the class are entitled to an injunction permanently enjoining Defendants from engaging in the acts and practices above as to any person who is a member, or could become a member, of the class of persons described in this suit.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendants be cited to appear and answer these allegations and that, upon final trial of this cause, they be granted all relief to which they are justly entitled, including:

a.   Certification of the class of Chapter 13 debtors who have been subjected to false forbearance notices filed by Defendants in such debtors' Chapter 13 cases;

b.   Disgorgement of any compensation received by Defendants in connection with the false forbearances and/or the preparation and filing of the false forbearance notices;

c.   All actual damages, including attorneys' fees and costs (at trial and on appeal) to which Plaintiffs are entitled;

d.   All compensatory damages to which Plaintiffs are entitled, including attorneys' fees and costs, exemplary damages, and/or punitive damages and sanctions for Defendants' actions as described herein, and a finding of contempt;

e.   A declaration that Defendants' actions violate 11 U.S.C. §§ 364, 1322(b)(5), 1327, and 1329, Fed. R. Bankr. P. 3002.1 and 4001(c), and constitute a gross abuse of the bankruptcy process;

f.   An injunction preventing Defendants from engaging in the conduct described herein and requiring Defendants to restore the Plaintiffs' and class members accounts to *status quo ante*, as though the account was never treated as being in forbearance status; and

g.   All such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Malissa L. Giles
Malissa L. Giles
Tracy Giles
Giles & Lambert, PC
PO Box 2780
Roanoke, VA 24001
Tel: (540) 981-9000
mgiles@gileslambert.com

/s/ Matthew Crow
Crow Law Firm
315-B North Main Street
Monroe, NC 28112
Tel: (704) 283-1175
Fax: (704) 226-0488

Theodore O. Bartholow III ("Thad")
Theodore O. Bartholow III ("Thad")*
Texas State Bar No. 24062602
Karen L. Kellett*
Texas State Bar No. 11199520
O. Max Gardner III*
N.C. State Bar No. 6164
KELLETT & BARTHOLOW PLLC
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
thad@kblawtx.com
kkellett@kblawtx.com
maxgardner@maxgardner.com

/s/Abelardo Limon
Abelardo Limon*
Texas State Bar No. 1235770
890 W. Price Road
     Brownsville, TX 78520
Tel: (956) 544-7770
Fax: (956) 544-4949

*Attorneys for the Plaintiffs*

*Admitted Pro Hac Vice