# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **TROY SHANNON HARLOW, et al.,** ) | |
| Plaintiff, ) | |
| ) | Case No. 7:22-cv-00267 |
| v. ) | |
| ) | By: Michael F. Urbanski |
| **WELLS FARGO & CO.** and ) | Chief United States District Judge |
| **WELLS FARGO BANK, N.A.,** ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the court on a motion filed by defendants Wells Fargo & Co. and Wells Fargo Bank, N.A. (collectively "Wells Fargo") to dismiss the Second Amended Class Action Complaint filed by plaintiffs Troy Shannon Harlow, Mark Stephen Estes, Kimberley Porter Fewell, Beatriz Villegas-Rodriguez, and Rodolfo Rodriguez. The Second Amended Complaint, originally filed as an adversary proceeding in bankruptcy court, was consolidated with a putative class action case, Gerald Forsburg v. Wells Fargo & Co., No. 5:20cv00046, until the Forsburg case was transferred to the Northern District of California on May 16, 2022. While both Harlow and Forsburg allege violations of law stemming from decisions Wells Fargo made at the outset of the COVID-19 pandemic to place certain borrower's loans into forbearance status, Harlow exclusively involves Wells Fargo's decision to file forbearance notices in pending Chapter 13 bankruptcy proceedings.

This case has been slow developing, in part because the parties sought to stay matters because of settlement discussions, and in part because of the transfer of forum issue. Wells Fargo's motion to dismiss, originally filed in bankruptcy court, has been briefed and argued and is ripe for decision.

As explained herein, Count I of the Harlow Second Amended Complaint, alleging a Racketeering Influenced and Corrupt Organizations Act (RICO) claim, fails to sufficiently allege a pattern of racketeering activity. Accordingly, Count I of the Second Amended Complaint is **DISMISSED**.

Wells Fargo also moved to dismiss Count II—Unauthorized Practice of Law, Count IV—Objection to False Forbearance Notices, Count IX—Defamation, and Count X—Attorneys' Fees. The Harlow plaintiffs' opposition brief raises no argument in opposition to the dismissal of these counts, Plaintiffs' Mem. in Opp'n, ECF No. 4-3, and none was raised at oral argument. Hr'g Tr., No. 5:20cv0046, ECF No. 108. As such, Counts II, IV, IX, and X are deemed to be abandoned and **DISMISSED**.

The five remaining counts allege violations of various sections of the bankruptcy code and rules. Count III alleges violations of Fed. R. Bankr. P. 3002.1(b). Count V alleges violations of the automatic stay pursuant to 11 U.S.C. § 362(a). Counts VI, VII, and VIII allege abuse of process, contempt, and fraud on the bankruptcy court subject to 11 U.S.C. § 105. Plainly, these claims arise out of or are related to a case under Title 11. As a consequence, Counts III, V, VI, VII, and VIII are **REFERRED** back to the United States Bankruptcy Court for the Western District of Virginia for consideration of those claims in the first instance.

Because of the dismissal of Counts I, II, IV, IX and X and the referral of Counts III, V, VI, VII, and VIII back to the bankruptcy court, the Clerk is directed to **ADMINISTRATIVELY CLOSE** this case, No. 7:22cv00267, pending in the district court.

## I.

The ten-count adversary complaint at issue here, filed within the <u>Harlow</u> bankruptcy case, alleges that Wells Fargo filed false and unauthorized forbearance notices in Chapter 13 bankruptcy cases as part of its response to the COVID-19 pandemic and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136 (Mar. 27, 2020). The <u>Harlow</u> plaintiffs allege that Wells Fargo unilaterally filed false mortgage forbearance notices in bankruptcy courts across the country without the debtors' consent, and thus placed Chapter 13 debtors at risk of having their bankruptcy cases dismissed or denied due to over or under payment of their mortgage obligations.

Wells Fargo moved to dismiss the Second Amended Complaint in the bankruptcy court. Because of the RICO claim, the court withdrew the reference to the bankruptcy court. <u>See</u> Mem. Op., No. 7:20mc00030, ECF No. 14; Order, ECF No. 2. Subsequent briefing and argument on the motion to dismiss were consolidated with the <u>Forsburg</u> case.

## II.

Count I alleges that Wells Fargo and others conducted or participated in a RICO enterprise, in violation of 18 U.S.C. § 1962(c). Section 1962(c) provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). "'Racketeering activity' is defined as any of a number of predicate acts, including mail and wire fraud." <u>Al-Abood v. El-Shamari</u>, 217 F.3d 225, 238 (4th Cir. 2000). The predicate acts alleged in this case are mail and wire fraud. Second Amended Complaint,

3

ECF No. 8, at ¶ 224. For a pattern of racketeering activity to exist, "two or more predicate acts of racketeering must have been committed within a ten year period." ePlus Tech., Inc. v. Aboud, 313 F.3d 166, 181 (4th Cir. 2002).

The pattern requirement is important because "[i]n providing a remedy of treble damages . . . Congress contemplated that only a party engaging in widespread fraud would be subject to such serious consequences." Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989). For this reason, RICO's remedies are not appropriate for "the ordinary run of commercial transactions." Id.; see also ePlus Tech, 313 F.3d at 181 (noting that the pattern requirement is "designed to prevent RICO's harsh sanctions . . . from being applied to garden-variety fraud schemes"). Instead, courts "have reserved RICO liability for 'ongoing unlawful activities whose scope and persistence pose a special threat to social well-being.'" Al-Abood, 217 F. 3d at 238 (quoting Menasco, 886 F.2d at 684).

Consequently, "simply proving two or more predicate acts is insufficient for a RICO plaintiff to succeed." Id. at 238. Instead, "a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989) (emphasis in original). "In essence, the pattern requirement has been reduced to a 'continuity plus relationship' test." ePlus Tech, 313 F.3d at 181.

The Supreme Court explained the continuity requirement in H.J. Inc.:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship*

4

> these predicates must bear to one another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

492 U.S. at 241–42 (emphasis in original, internal quotation omitted). "'The target of [RICO] is thus not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.'" Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 498, 496 n.14 (1985) (quoting S. Rep. No. 91-617, p. 158 (1969).

The Second Amended Complaint alleges that shortly following the passage of the CARES Act, the "Wells Fargo Enterprise" filed at least 904 false forbearance notices in Chapter 13 proceedings throughout the United States. Pls.' Mem. of Law in Opp'n to Wells Fargos' Mot. to Dismiss, ECF No. 4-3, at 2.

The Second Amended Complaint alleges the existence of the "Wells Fargo Enterprise," consisting of: Wells Fargo & Co. ("WFC"), a diversified financial services company and bank holding company; Wells Fargo Bank, N.A., a national banking association; and various vendors, including Black Knight, Inc., InfoEx, LLC, and ALAW, with whom Wells Fargo works to service, communicate, and record data regarding mortgage loans. Second Amended Complaint, ECF No. 8, ¶¶ 204, 207–212. As to RICO's enterprise requirement, the Second Amended Complaint alleges:

5

> 206. The members of the Wells Fargo Enterprise function as a continuing unit and share the common purpose of maximizing their profits by placing Chapter 13 debtors' loans into unauthorized forbearance status and subjecting Plaintiffs and class members to the burdens and consequences of their false forbearance notices filed in debtors' Chapter 13 bankruptcies.

Id. at ¶ 206. The Second Amended Complaint further alleges:

> 222. WFC and Wells Fargo Bank control, operate, and direct the affairs of the Wells Fargo Enterprise, by, among other things, working with InfoEx and Black Knight to program their computer systems to identify borrower accounts for inclusion in the fraudulent forbearance scheme and to generate, store, and communicate the unlawful false forbearance notices for Wells Fargo customers with active Chapter 13 bankruptcy cases.

Id. at ¶ 222.

The racketeering activity alleged in the Second Amended Complaint consists of wire fraud and mail fraud surrounding the filing of the forbearance notices in response to the COVID-19 pandemic and following the passage of the CARES Act. Id. at ¶ 224. The Second Amended Complaint alleges:

> 227. The matter and things sent by Defendants via the Postal Service, commercial carrier, wire, or other interstate electronic media included, inter alia: false forbearance notices filed with bankruptcy courts around the country, email correspondence to counsel for Chapter 13 debtors, data used to prepare false forbearance notices, agreements, monthly mortgage statements, correspondence, payments, and filings with the United States Bankruptcy Court using the court's Electronic Case Filing system.
>
> 228. Other matters and things sent through or received via the Postal Service, commercial carrier, wire, or other interstate electronic media by Defendants included information or communications among members of the Wells Fargo Enterprise in furtherance of or necessary to effectuate the fraudulent forbearance scheme, including by identifying eligible borrower accounts for placement into unauthorized forbearance status,

6

> repurchasing Ginnie Mae loans in unauthorized forbearance, filing false forbearance notices in Plaintiffs' and other Chapter 13 debtors' bankruptcy cases, and by sending paper and electronic correspondence to borrowers and/or their bankruptcy counsel regarding post-forbearance workout options.
>
> 229. The false forbearance notices fraudulently misrepresent that Plaintiffs' and the class members' loan payment obligations have been suspended by Wells Fargo at the request of the Plaintiffs due to financial hardship caused by the COVID-19 crisis. These notices also misrepresent that the terms of such notices were lawful and authorized by the CARES Act and the underlying mortgage loan documents, applicable bankruptcy law, and that they were approved and/or accepted by the Plaintiffs and/or the other class members.
>
> 230. As set forth above, among other things, Defendants' purpose in causing the false forbearance notices to be prepared and filed in Plaintiffs' and other Chapter 13 debtors' bankruptcy cases is to invoke CARES Act-specific relief from Wells Fargo's ordinary principal and interest advance obligations under applicable GSE or Ginnie Mae servicing requirements, including by limiting the number of principal and interest advances Wells Fargo is required to make on delinquent GSE loans and/or by qualifying Ginnie Mae loans for repurchase by Wells Fargo based on false representations to Ginnie Mae investors that such loans were in voluntary forbearance status for 90 or more days.

Id. at ¶¶ 227–230. The Second Amended Complaint summarizes that "Wells Fargo is using the unauthorized CARES Act forbearances to place accounts into an artificial delinquency status (to limit principal and interest advance obligations or to justify repurchase of Ginnie Mae loans) while also avoiding the accounting consequences of holding or servicing delinquent loans." Id. at ¶ 233.

The Second Amended Complaint alleges that "Defendants did not begin filing the false forbearance notices until after the passage of the CARES Act in March of 2020," id. at ¶ 242, and that "[d]uring second quarter 2020, Wells Fargo unilaterally extended prior unauthorized

7

forbearances for an additional 90 days, including 90-day extensions of unauthorized forbearances Wells Fargo imposed on Plaintiffs' and other Chapter 13 debtors' mortgage loans." Id. at ¶ 235.

The Second Amended Complaint alleges that Wells Fargo filed the false forbearance notices in plaintiffs' Chapter 13 cases between April 29 and May 12, 2020. Id. at ¶¶ 91, 109, 121, and 143. Plaintiffs responded promptly to the filing of false forbearance notices. Wells Fargo filed a forbearance notice in Troy Harlow's Chapter 13 case on April 29, 2020, and his counsel filed an objection on June 18, 2020. Id. at ¶¶ 91, 98. Wells Fargo filed a forbearance notice in Mark Estes's Chapter 13 case on May 11, 2020, and two days later, on May 13, 2020, his counsel filed an objection. Id. at ¶¶ 107, 112. Wells Fargo filed a forbearance notice in Kimberly Fewell's Chapter 13 case on May 12, 2020, and following inquiry by her counsel, on June 10, 2020, Wells Fargo filed a Notice of Withdrawal of Debtor's Request for Mortgage Forbearance Due to the COVID-19 Pandemic for 90 Days. Id. at ¶¶ 121, 139. Wells Fargo filed a forbearance notice in Beatriz Villegas-Rodriguez's and Rodolfo Rodriguez's Chapter 13 case on May 12, 2020, and they filed an objection on June 19, 2020. Id. at ¶¶ 143, 162.

The Second Amended Complaint alleges that the filing of the false forbearance notices has assailed the integrity of the Chapter 13 bankruptcy process and injured plaintiffs "in their business or property in a variety of ways, including by Wells Fargo actively undermining Plaintiffs' and the other class members' bankruptcy reorganizations through its practice of filing false notices of forbearance in Plaintiffs' and the other class members' bankruptcy cases." Id. at ¶ 252. The Second Amended Complaint specifically alleges the following injury:

> 253. Plaintiffs and the other class members have also been injured in that their mortgage loans have been unlawfully subjected to

8

> the risk that they could be treated as being in contractual default as a result of Defendants' filing of the false forbearance notices, which can result in Chapter 13 Trustees holding funds paid by debtors and intended to be applied toward such debtors' ongoing post-petition monthly mortgage payments and/or by Wells Fargo placing borrower funds received during the post-petition forbearance periods into a "suspense" or "unapplied funds" account, which causes the loans to continue accruing interest on the unpaid principal balances, resulting in the accrual of contractual late fees, and causing Wells Fargo to assess charges for property inspections, broker price opinions, motions for relief from stay, foreclosure referrals, and other unlawful and improper default-related "services" and processes that are triggered by Wells Fargo's treatment of the loan as being in contractual default due to the fact that Wells Fargo believes the loans to be in forbearance status and that it has therefore received less than full contractual monthly mortgage payments in Plaintiffs' and other class members' cases.

Id. at ¶ 253.

Critically, there is no allegation of continued racketeering activity or a threat of continued racketeering activity. Rather, the predicate acts consist of the filing of the false forbearance notices in bankruptcy cases at the outset of the COVID-19 pandemic in the spring of 2020. These allegations fall short of meeting the continuity requirement of the pattern of racketeering activity element necessary to state a civil RICO claim. Plaintiffs allege that in late April and early May 2020, Wells Fargo filed false forbearance notices in their Chapter 13 cases. The allegations of the Second Amended Complaint cannot be read to allege open-ended continuity as there is no suggestion that the filing of false forbearance notices during the early days of the COVID-19 pandemic following the enactment of the CARES Act represents "past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. As the Court explained in H.J Inc., "[a] RICO pattern may surely be established if the related predicates themselves involve a distinct threat of long-term racketeering activity,

9

either implicit or explicit," id. at 242, such as in the case of a hoodlum selling "insurance" against window breaking to storekeepers so long as they continued to pay their monthly premiums.

> In other cases, the threat of continuity may be established by showing that the predicate acts or offenses are part of an ongoing entity's regular way of doing business. Thus, the threat of continuity is sufficiently established where the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes.

Id. at 242–43. Here, the only predicate acts alleged are the filing of false forbearance notices in Chapter 13 cases in late April and early May 2020 which "was not the sort of fraud that presented a particular threat of continuing into the future." GE Investment Private Placement Partners II v. Parker, 247 F.3d 543, 550 (4th Cir. 2001). See US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 318 (4th Cir. 2010) ("To allege open-ended continuity, a plaintiff must plead facts that demonstrate a 'threat of continuity,' i.e., facts that give rise to a reasonable expectation that the racketeering activity will 'extend[ ] indefinitely into the future." (quoting H.J. Inc., 492 U.S. at 242).

Rather, what is alleged is a closed-ended scheme during which Wells Fargo falsely filed a large number of false forbearance notices in Chapter 13 bankruptcy cases around the country in a very short period of time—between late April and early May 2020—shortly after the CARES Act was enacted to provide relief from the COVID-19 pandemic. Plaintiffs allege multiple instances of mail and wire fraud surrounding the filing of false forbearance notices in at least 904 Chapter 13 bankruptcy cases around the country.[1] The Second Amended

---

[1] The Fourth Circuit has expressed caution "about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice."

10

Complaint alleges that these notices were filed shortly after the passage of the CARES Act, and took place between April 29 and May 12, 2020. Thus, while numerous, the filing of forbearance notices took place over a brief period of time.

"To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, *continuing* racketeering activity. H.J. Inc., 492 U.S. at 240. Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned with long-term criminal conduct." Id. at 242; see also id. (continuity requires activity over a "substantial period of time"); id. at n. 4 (continuity requires "long-term criminal activity"). "Thus, predicate acts must be part of a prolonged criminal endeavor." Menasco, 886 F.2d at 684. In GE Investment, the Fourth Circuit found allegations of predicate acts occurring over seventeen months not to "present the type of persistent, long-term fraudulent conduct" present "in other cases addressing closed-ended continuity." 247 F.2d at 550–51. In so ruling, the court distinguished cases such as Morley v. Cohen, 888 F.2d 1006, 1010 (4th Cir. 1989), and Walk v. Baltimore & Ohio R.R., 890 F.2d 68, 690 (4th Cir. 1989), in which the predicate acts occurred over five and ten years, respectively. See Lyon v. Campbell, 28 F.3d 1210, *3 (4th Cir. 1994) (holding there was no pattern of racketeering activity where "the majority of the predicate acts identified in the complaint took place in [a] seven-month period").

---

Al-Abood, 217 F. 3d at 238 (internal quotations omitted). "This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity." Id. The Fourth Circuit has stated that it "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988). "[T]o adopt such a characterization would transform every such dispute into a cause of action under RICO." Id. (internal quotation omitted).

11

Here, plaintiff's allegations fail to satisfy the continuity prong of RICO's pattern requirement. The scheme alleged centered around the filing of false forbearance notices over a few weeks in the spring of 2020 following the passage of the CARES Act. Because the alleged predicate acts occurred over such a brief period and bear no threat of repetition, they fail to establish the continuity of criminal conduct required for a civil RICO claim. As the Fourth Circuit noted in Menasco, "[i]f we were to recognize a RICO claim based on the narrow fraud alleged here, the pattern requirement would be rendered meaningless." 886 F.2d at 685.

At oral argument, counsel for the Harlow plaintiffs addressed the continuity requirement by citing to other legal problems Wells Fargo has had. Counsel argued as follows:

> But I think that the real issue that has been raised is whether there's really a pattern of racketeering element that's been presented by this case. And, you know, there's case law that suggests that you need to have both sort of – a consistency of action but also that it be occurring over time.
>
> And with respect to that, I would refer the Court in particular to Appendix I to the Forsburg complaint as well as to the senator's letters to Wells Fargo which outline various abuses by Wells Fargo historically using specifically the bankruptcy process to effectuate its schemes.
>
> So in addition to the nonbankruptcy cases of Bias and Young, where they were charging unauthorized fees and charges to borrowers' accounts, Wells Fargo has a lengthy history of filing overstated proofs of claims using the bankruptcy motion for relief from state process, which is the process through which a mortgage creditor in Chapter 13 asks for permission to be allowed to go after foreclosure of a borrower's home, and filing false affidavits or Robo-signed, you know, know-nothing affidavit simply to speed and effectual its reacquisition of those properties.
>
> More recently, and we referenced this in our complaint and in our response, there's the Green settlement that Wells Fargo entered into with the Department of Justice over in Maryland

12

> where Wells Fargo paid in excess of $80 million to settle claims for its abuse of the Rule 3002.1 procedures and filings that are essentially the same kinds of forms at issue here . . . .

H'rg Tr. Case No. 5:20cv00046, ECF No. 108, at 55–56.

The problem with this argument is that it is not borne out in the pleadings in the Harlow case. The litany of Wells Fargo's legal failings attached as Appendix 1 to the Forsburg complaint was not appended to or otherwise alleged in the Harlow complaint. The Harlow Second Amended Complaint references 2015 and 2016 bankruptcy court rulings in In re Eyer, No. 12-70985, Mem. Order Striking Notice of Payment Change, Docket No. 93 (Bankr. W.D. Pa. Dec. 30, 2015), and In re Allen, No. 13-31034, Order Sustaining Objection to Notice of Mortgage Payment Change, Docket No. 29 (Bankr. W.D. N.C. Sept. 19, 2016), in the following context:

> 181. Wells Fargo has previously been admonished for engaging in similar conduct involving the filing of Rule 3002.1 Notices of Mortgage Payment Change that falsely asserted that borrowers had agreed to mortgage loan modifications that the borrowers knew nothing about, including in the United States Bankruptcy Court for the Western District of Pennsylvania and in the United States Bankruptcy Court for the Western District of North Carolina.

Second Amended Complaint, ECF No. 8, ¶ 181. While the references to the In re Eyer and In re Allen orders in paragraphs 181 and 182 are "repeat[ed] and reallege[d]" in the RICO count by means of paragraph 202, that incorporation by reference is insufficient to broaden the pattern of racketeering alleged in Count I beyond the filing of false forbearance notices in April and May 2020 in response to the COVID-19 pandemic and the CARES Act. The Harlow plaintiffs describe the forbearance notices at the center of this case as follows:

13

> 163. Defendants and their agents have prepared, filed, and served forbearance notices in Chapter 13 bankruptcy cases pending before bankruptcy courts across the country that falsely assert that "due to a recent financial hardship resulting directly or indirectly from the COVID-19 emergency," the Chapter 13 debtors in whose cases the notices were filed "requested, and Creditor\Servicer (sic) [Wells Fargo Bank, N.A.] has provided a temporary suspension of mortgage payments."
>
> 164. Defendants' forbearance notices filed in the putative class members' cases also falsely assert that, "[t]his short-term relief is consistent with the COVID-19 relief available under the Coronavirus Aid, Relief, and Economic Security (CARES) Act."

Id. at ¶ 163–164. The RICO predicate acts alleged in the Second Amended Complaint are multiple instances of wire and mail fraud associated with the filing of the false forbearance notices. "Defendants did not begin filing the false forbearance notices until after passage of the CARES Act in March of 2020." Id. at ¶ 242. In other words, while the allegations in paragraphs 181 and 182 provide historic backdrop of problems Wells Fargo has had with Fed. R. Bankr. P. 3002.1 in bankruptcy courts elsewhere, the history related in those paragraphs fall outside of the predicate acts alleged to have been undertaken by Wells Fargo in furtherance of the pattern of racketeering activity alleged in Count I which is limited to the filing of false forbearance notices in Chapter 13 proceedings in response to the COVID-19 pandemic and the passage of the CARES Act.

On balance, the court concludes that "this case is not sufficiently outside of the heartland of fraud cases to warrant RICO treatment." Al-Abood, 217 F. 3d at 238. As such, the RICO claim must be dismissed. In affirming the dismissal of a civil RICO claim in Whitney, Bradley & Brown, Inc., v. Kammermann, 436 Fed. App'x 257, 264 (4th Cir. 2011), the Fourth Circuit concluded:

14

> On the closed-ended pattern question, the record circumscribes the predicate acts, and, as the court properly recognized, those acts are insufficient to form the basis for such a scheme. Put simply, this dispute exemplifies the situation of a RICO plaintiff who seeks to transform an ordinary commercial fraud scheme into a RICO claim, something we are loath to approve.

This conclusion applies equally well in this case. Count I, alleging a civil RICO claim, is **DISMISSED**.

### III.

The Harlow plaintiffs have made no written or oral argument opposing Wells Fargo's motion to dismiss Counts II, IV, IX, and X, alleging Unauthorized Practice of Law, Objection to False Forbearance Notices, Defamation, and Attorneys' Fees, respectively. The Harlow plaintiffs' opposition brief raises no argument against dismissal of these counts, Plaintiffs' Mem. in Opp'n, ECF No. 4-3, and none was raised at oral argument. Hr'g Tr., No. 5:20cv0046, ECF No. 108. In the appellate context, the Fourth Circuit recently stated that "an appellee's wholesale failure to respond to a conspicuous, nonfrivolous argument in the appellant's brief ordinarily constitutes a waiver." West Virginia Coal Workers' Pneumoconiosis Fund v. Bell, 781 Fed. App'x 214, 216 (4th Cir. 2019) (citing Alvarez v. Lynch, 828 F.3d 288, 295 (4th Cir. 2016). District courts in this circuit have held that the failure to address an argument in opposition to a motion to dismiss constitutes an abandonment of the claim. Ferdinand-Davenport v. Children's Guild, 742 F. Supp. 2d 772, 777 (D. Md. 2010); Sawyers v. United Parcel Service, Inc., No. 1:18cv1037, 2019 WL 4305771 (M.D. N.C. Sept. 11, 2019); Fravel v. Ford Motor Co., 973 F. Supp. 2d 651, 654 (W.D. Va. 2013); Eary v. Anderson Equipment Co., No. 2:21cv00104, 2021 WL 1910040, *2 (S.D. W.Va. May 12, 2021). As such, Counts II, IV, IX, abandoned by the Harlow plaintiffs, are **DISMISSED**.

15

## IV.

The remaining counts of the Second Amended Complaint allege violations of bankruptcy statutes and rules or otherwise stem from filings made in bankruptcy proceedings. Count III alleges that the forbearance notices violated Fed. R. Bankr. P. 3002.1(b). Count V alleges willful violations of the automatic stay set forth in 11 U.S.C. § 362. Counts VI, VII, and VIII allege abuse of process, contempt, and fraud on the bankruptcy court subject to 11 U.S.C. § 105. The Second Amended Complaint seeks "a declaration that Defendants' conduct as described herein violates 11 U.S.C. §§ 364, 1322(b)(5), 1327, and 1329, Fed. R. Bankr. P. 3002.1 and 4001(c) and constitutes a gross abuse of process." Id. at 334.

The court previously withdrew the reference to the bankruptcy court because of the RICO claim. Now that the RICO claim has been dismissed, it is appropriate to refer the remaining claims—alleging that the filing of the false forbearance notices in Chapter 13 proceedings violated various bankruptcy statutes or rules—to the bankruptcy court. "Congress has divided bankruptcy proceedings into three categories: those that 'arise under title 11'; those that 'arise in' a title 11 case; and those that are 'related to a case under title 11.'" Stern v. Marshall, 564 U.S. 462, 473 (2011) (quoting 28 U.S.C. § 157(a)); MDC Innovations, LLC v. Hall, 726 F. App'x 168, 170 (4th Cir. 2018) ("District courts may refer any or all of such proceedings to the bankruptcy court."). The remaining counts fit comfortably within this framework.

Each of the remaining counts stems directly from Wells Fargo' filing of the forbearance notices in plaintiffs' Chapter 13 cases. As such, these claims arise out of or are related to a case

16

under Title 11. The five remaining claims expressly allege a violation of a bankruptcy statute or rule and seek relief thereunder. As to these claims, the bankruptcy court has greater familiarity and expertise than the district court. Allowing the bankruptcy court to address these bankruptcy-related claims in the first instance promotes judicial economy and the uniform administration of bankruptcy proceedings. Accordingly, the court orders **REFERRAL** of Counts III, V, VI, VII, and VIII of Case No. 7:22cv267 to the United States Bankruptcy Court for the Western District of Virginia pursuant to 28 U.S.C. § 157 and General Rule 3 of the Local Rules for the Western District of Virginia.

Because of the dismissal of Counts I, II, IV, IX and X and the referral of Counts III, V, VI, VII, and VIII back to the bankruptcy court, the Clerk is directed to **ADMINISTRATIVELY CLOSE** this case, No. 7:22cv00267, pending in the district court.

An appropriate Order will be entered.

Entered: June 21, 2022

Digitally signed by Michael F. Urbanski
Chief U.S. District Judge
Date: 2022.06.21 15:41:10 -04'00'

Michael F. Urbanski
Chief United States District Judge