

SIGNED THIS 12th day of December, 2022

THIS MEMORANDUM OPINION HAS BEEN ENTERED
ON THE DOCKET. PLEASE SEE DOCKET FOR
ENTRY DATE.

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 17-71487** |
| **TROY SHANNON HARLOW,** | ) | |
| | ) | **Chapter 13** |
| Debtor. | ) | |

| | | |
|---|---|---|
| **TROY SHANNON HARLOW, *et al.*,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Adversary Proc. No. 20-07028** |
| | ) | |
| **WELLS FARGO & CO. and** | ) | |
| **WELLS FARGO BANK, N.A.,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on a motion filed by the Defendants Wells Fargo & Co.

and Wells Fargo Bank, N.A. (collectively "Wells Fargo") to dismiss the Second Amended Class

Action Complaint ("SAC") filed by the Plaintiffs Troy Shannon Harlow, Mark Stephen Estes,

Kimberly Porter Fewell, Beatriz Villegas-Rodriguez, and Rodolfo Rodriguez. After dismissal of

numerous counts by the United States District Court for the Western District of Virginia (Case

No. 7:22-cv-00267), five remaining counts were referred back to this Court by the District Court.

These remaining counts allege violations of various sections of the Bankruptcy Code and Rules.

Count III alleges violations of Federal Rule of Bankruptcy Procedure 3002.1(b). Count V alleges

violations of the automatic stay pursuant to 11 U.S.C. § 362(a). Counts VI, VII, and VIII allege

abuse of process, contempt, and fraud on the bankruptcy court, all invoking 11 U.S.C. § 105.

Wells Fargo has moved to dismiss all remaining counts pursuant to Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, in addition to

moving to dismiss the holding company Wells Fargo & Co. as a party for failure to sufficiently

plead facts to pierce the corporate veil.[1] The parties fully briefed the issues and this Court heard

argument from counsel on November 14, 2022. The matter is now ripe for resolution.

### **FACTUAL BACKGROUND**

This adversary proceeding stems from alleged acts by Wells Fargo after the onset of the

COVID-19 pandemic. The Plaintiffs' key allegations of fact are that the Plaintiffs, who are

debtors in open Chapter 13 bankruptcy cases in various courts around the country, had their

mortgage loans placed in forbearance status by Wells Fargo without the Plaintiffs' permission,

knowledge or request. Additionally, the Plaintiffs allege that Wells Fargo filed a notice of

forbearance on the claims register through a Rule 3002.1 notice or a notice of forbearance on the

main case docket in each case, all of which contained false statements that the Plaintiffs had

requested forbearance from Wells Fargo. The notices of forbearance, whether on the claims

register or the main case docket, provided, in part, as follows:

> Wells Fargo Bank, N.A. ("Creditor\Servicer") hereby provides notice that due to a
> recent financial hardship resulting directly or indirectly from the COVID-19
> emergency, the Debtor has requested, and Creditor\Servicer has provided a

---

[1] In paragraph 6 of the SAC, Wells Fargo & Co. is referred to as the parent corporation of Wells Fargo Bank, N.A.
Elsewhere in the SAC, it is referred to as a holding company. ¶ 214. Here, the Court will use the terms
interchangeably.

temporary suspension of mortgage payments. This short-term relief is consistent with the COVID-19 relief available under the Coronavirus Aid, Relief, and Economic Security (CARES) Act.

During this short-term relief, all terms and provisions of the mortgage note and security instrument, other than the payment obligations, will remain in full force and effect unless otherwise adjusted by this court or through a loan modification. If full or partial payments continue to be received during the forbearance period, Creditor/Servicer will apply such payment(s) pursuant to standard operating procedures.

During the forbearance period and up to and including the time when that period ends, Creditor\Servicer will work with the Debtor, the Debtor's attorney (if applicable) and the bankruptcy trustee on how to address the suspended payments in the long-term, including obtaining any necessary court consent and approval. NOTE: This Temporary Forbearance does not forgive any indebtedness; it only suspends the date that such indebtedness must be paid.

This Notice does not constitute an amendment or modification to the Debtor's plan of reorganization, and does not relieve the Debtor of the responsibility to amend or modify the plan of reorganization to reflect the forbearance arrangement, if required.

See Estes, No. 17-70327, ECF 77. The Plaintiffs contend they never asked for the forbearances, despite the notices explicitly saying they were debtor requested. Many, if not all, of the Plaintiffs were forced to file motions to strike the forbearance notices through counsel. See Estes, No. 17-70327, ECF 78.  In some instances, the notices were withdrawn by Wells Fargo with the recitation they were erroneously filed. See Estes, No. 17-70327, ECF 79.

The Plaintiffs further claim Wells Fargo's placement of the Plaintiffs' mortgages in forbearance and the filing of false forbearance notices were part of a scheme by Wells Fargo to benefit from, among other things, CARES Act financial incentives for mortgage companies that were triggered when forbearance was requested by a debtor. Wells Fargo denies all intentional wrongdoing and any scheme for financial gain, asserting that the pandemic and the subsequent implementation of CARES Act forbearances brought tumultuous times in the administration of

3

the mortgage loans, that Wells Fargo intended only to help struggling debtors, and that there was no intention to cause any negative effect upon any debtor.[2]

## JURISDICTION

This Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the delegation made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (O).

## STANDARD OF REVIEW

Wells Fargo filed a Motion to Dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6), incorporated into adversary proceedings by Federal Rule of Bankruptcy Procedure 7012(b). The Defendants move to dismiss all remaining counts (Count III –Violation of Federal Rule of Bankruptcy Procedure 3002.1; Count V – Violation of Automatic Stay; Count VI – Abuse of Process; Count VII – Contempt; and Count VIII – Fraud on the Court) for failure to state a claim upon which relief can be granted, and move to dismiss the parent company Wells Fargo & Co. as a party for failure to sufficiently plead facts to pierce the corporate veil.[3]

Under Rule 12(b)(6), a party may move a court to dismiss a complaint if the plaintiff has not alleged sufficient facts, taken as true, to show that the claim for relief is plausible at best. Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570–72 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A motion to dismiss under Rule 12(b)(6) tests the

---

[2] The Plaintiffs seek class certification pursuant to Federal Rule of Bankruptcy Procedure 7023(a) as Wells Fargo's alleged wrongful conduct set forth in the SAC is both widespread and uniform.

[3] A more detailed summary of the claims dismissed by the District Court, including those under the Racketeer Influenced and Corrupt Organizations Act, is found at *Harlow v. Wells Fargo & Co.*, No. 7:22-cv-00267, 2022 WL 2231601 (W.D. Va. June 21, 2022).

legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Consequently, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679.

Only facts can render a claim for relief plausible. "[F]ormulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor is it sufficient for a plaintiff to plead facts merely consistent with liability. The plaintiff must plead enough factual content to nudge a claim across the border from mere possibility to plausibility. *Id.* at 570. *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The well-pleaded factual allegations in the SAC and summarized above are accepted as true and all reasonable inferences drawn from those facts are construed in the light most favorable to the Plaintiffs. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review); *Ironworks Development LLC v. Truist Bank*, No. 3:21-CV-00032, 2022 WL 16834592 (W.D. Va. Nov. 9. 2022).

## CONCLUSIONS OF LAW

### I. Count III: Violation of Federal Rule of Bankruptcy Procedure 3002.1

The Defendants move to dismiss Count III as Rule 3002.1 does not give rise to a cause of action, the notices at issue explicitly disclaimed compliance with that Rule, and that this Court lacks jurisdiction over the claims for debtors in other courts.[4] The Plaintiffs allege the following in the SAC: Wells Fargo violated Federal Rule of Bankruptcy Procedure 3002.1(b) by filing false forbearance notices using Rule 3002.1 Notices of Mortgage Payment Change ("NOMPC")

---

[4] The jurisdiction argument is addressed below in footnote 11 of this Opinion.

and Official Bankruptcy Form 410S1. The Plaintiffs allege that the Defendants did not comply

with the time mandates in the Rule by filing the notices after the Plaintiffs had supposedly been

in forbearance for months, and thus were unknowingly making their monthly payments without

obligation to do so. The Plaintiffs further state that Wells Fargo's misconduct has damaged the

Plaintiffs and caused them to incur attorneys' fees to correct the errors.

 Wells Fargo responds by arguing that a procedural rule does not give rise to a private

cause of action. Further, Wells Fargo states that the notices at issue filed on the claims register

explicitly disclaimed compliance with the Rule within the text of the notice. The disclaimer

states:

> The use of Official Form 410S1 and of the electronic filing method for a Notice of
> Payment Change is being used to provide interested parties with notice of the
> forbearance arrangement, detailed below. It is only being used due to limitations on
> existing functionality available to limited users within the Courts' CMECF
> systems. The use of this form in no way implies that a payment change is occurring
> or has occurred on the account. <u>This filing does not imply that the provisions of
> FRBP 3002.1 apply to this filing, nor does the Servicer\Creditor consent to the
> application of any provisions of FRBP 3002.1 to this filing.</u>

Harlow, No. 17-71487, Claim 7, NOMPC filed April 29, 2020 (emphasis in original).

 Wells Fargo asserts that their notices were not an attempt to give notice of a change in the

amount of the Plaintiffs' payments pursuant to Rule 3002.1, but rather to notify interested parties

that the Plaintiffs were provided forbearance relief. Further, Wells Fargo contends the Plaintiffs'

alleged harms are purely hypothetical and not substantive.

 The Court will separate its ruling on the Plaintiffs' claims based on the method through

which an alleged false forbearance notice was filed.

### A. **Plaintiffs Rodriguez and Harlow's Claims**

Rule 3002.1(b)(1) states, in part, as follows:

> The holder of the claim shall file and serve on the debtor, debtor's counsel, and the trustee a notice of any change in the payment amount, including any change that results from an interest rate or escrow account adjustment, no later than 21 days before a payment in the new amount is due.

Fed. R. Bankr. P. 3002.1(b)(1).

While not explicitly stated in the Rule, other courts have held that filing a notice pursuant to Rule 3002.1 containing incorrect statements can be as damaging as failing to file such notice timely when required and can constitute a violation of Rule 3002.1 for which relief is available. The existing case law supports applying Rule 3002.1 to inaccurate statements in 3002.1 notices. For example, the court in *In re Heard,* No. BR 15-35564-PCM13, 2021 WL 3540412, at *1 (Bankr. D. Or. Aug. 11, 2021), granted attorneys' fees under Rule 3002.1(i) for violating Rule 3002.1 by filing notices with incorrect information. There, the mortgage company filed a Notice of Mortgage Payment Change indicating an escrow shortage and requiring an increase in monthly payments of over $200 per month. In reality, the debtor had made all required payments under her Chapter 13 plan, and any arrearage had been cured through the plan. In *Heard*, the Rule 3002.1 notice was incorrect and unwarranted. After the dispute between the mortgage company and the debtor was set for trial, and extensive preparations were taken, the dispute was resolved, but the debtor reserved the right to seek sanctions under Rule 3002.1(i). That portion of the Rule provides as follows:

> (i) Failure to Notify. If the holder of a claim fails to provide any information as required by subdivision (b), (c), or (g) of this rule, the court may, after notice and hearing, take either or both of the following actions: (1) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (2) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure.

Fed. R. Bankr. P. 3002.1(i).

*Heard* weighed *In re Tollstrup*, No. 15-33924-dwh13, 2018 WL 1384378 (Bankr. D. Or.

March 16, 2018)(not for publication), against *Trevino v. HSBC Mortgage Services, Inc.* (*In re*

*Trevino*), 535 B.R. 110 (Bankr. S.D. Tex. 2015, considering *Tollstrup*'s observation that the

purpose of Rule 3002.1 is to "'aid in implementation of section 1322(b)(5), which permits a

chapter 13 debtor to cure a default and maintain payments of a home mortgage over the course of

the debtor's plan'" and to "provide[] the debtor an opportunity to challenge the validity of any

changes." *Heard*, at *2. *Heard* considered *Trevino*, which concluded that Rule 3002.1(i)

provides relief only for a lack of timely notice – not for incorrect notice. *Id*. *Heard* found *Trevino*

to be lacking in analysis, and concluded that *Tollstrup* was more persuasive, thus granting

attorneys' fees for the incorrect notice. *Id.* In a later *Trevino* opinion entered after trial, the court

simply stated that "[b]ecause Rule 3002.1(i) provides relief in situations involving a lack of

notice, rather than incorrect notice, the Court finds that it should deny Plaintiffs' request to

award reasonable and necessary fees and expenses under Rule 3002.1(i)." *Trevino v. HSBC*

*Mortgage Services, Inc.* (*In re Trevino*), 615 B.R. 108, 146 (Bankr. S.D. Tex. 2020).  Like

*Heard*, this Court believes *Tollstrup* charts the better path.

Other decisions have treated material incorrect statements in Rule 3002.1 notices as lack

of notice in the context of Rule 3002.1(g) responses to the Trustee's Notice of Final Cure

Payments. In *In re Howard*, 563 B.R. 308, 314–15 (Bankr. N.D. Cal. 2016), the court struck the

incorrect responses from the record and awarded attorneys' fees. The mortgage company filed

multiple responses to the Trustee's Notice with "wildly" varying and conflicting amounts owed,

and the debtor had to expend resources to correct the record. *Id.* at 317. *Howard* stated that "[a]n

inaccurate response under Rule 3002.1(g) complies neither with the letter nor the spirit of Rule

8

3002.1 and defeats the very purpose for which Rule 3002.1 was enacted." *Id.* at 315. *In re Ferrell*, 580 B.R. 181, 187 (Bankr. D. S.C. 2017), ruled similarly, stating that "[t]he filing of an incorrect and inaccurate Rule 3002.1(g) statement is the equivalent of filing no statement at all. Indeed, an incorrect statement could be viewed as worse than no statement." *Id.* (subjecting the mortgage creditor to sanctions under Rule 3002.1(i) and Section 105).

The Defendants argue that a disclaimer was added to the notices stating the form did not purport to apply the Rule 3002.1 provisions. However, debtors, trustees, and any party monitoring the case should be able to give weight and authority to official forms such as Official Form 410S1; one filed containing false statements regarding important payment changes does not meet the notice requirements under Rule 3002.1. This disclaimer does not rid the form of false statements, and the form as completed and filed does not comply with the Defendants' obligations under Rule 3002.1. Even if unilaterally placing a debt in forbearance does not require the filing of a Rule 3002.1 notice, filing a notice with false information can still create unnecessary confusion and misinform parties about important aspects of a bankruptcy case, thus running afoul of the purposes of Rule 3002.1.

The argument that Rule 3002.1 does not afford a private right of action is a bit trickier, but the language in Rule 3002.1(i) is nearly identical to that found in Rule 3001(c)(2)(D).[5] Considering that provision, then-Chief Judge Connelly of this Court observed as follows:

> Although the Rules of Procedure may permit sanctions or other penalties as a part of enforcement, the Rules of Procedure do not allow for a private cause of action

---

[5] Bankruptcy Rule 3001(c)(2)(D) provides as follows: "If the holder of a claim fails to provide any information required by this subdivision (c), the court may, after notice and hearing, take either or both of the following actions: (i) preclude the holder from presenting the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless; or (ii) award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure."

for damages from violating a rule of procedure (in other words, as noted by
Midland, there is no private cause of action to seek damages for a violation of Rule
3001). Instead Rule 3001 gives the Court authority to patrol the parties before it to
achieve the efficient, speedy, and just resolution of adversarial and contested
matters.

*In re Thomas*, 592 B.R. 99, 111–12 (Bankr. W.D. Va. 2018), *aff'd sub nom. Midland Funding*

*LLC v. Thomas*, 606 B.R. 687 (W.D. Va. 2019). The Court believes that Rule 3002.1 must have

teeth to achieve its purposes, and that, different from a private right of action for compensatory

damages, punitive, non-compensatory sanctions can be warranted to achieve its purposes.

Otherwise, Rule 3002.1(i), the sanctions provision of the Rule (which is exactly what it is),

would have little deterrent ability as to future violations.[6] In that respect, a claim for punitive,

non-compensatory sanctions for violation of Rule 3002.1 can and should be able to be

maintained.[7]

The Court believes the facts as alleged, taken in the light most favorable to the Plaintiffs,

state a plausible claim against Wells Fargo for violation of Rule 3002.1 as to Harlow and the

Rodriguezes.

### B. **Plaintiffs Estes and Fewell's Claims**

While the Plaintiffs allege that Plaintiffs Rodriguez and Harlow received notice of

forbearance by an Official Form 410S1, other named Plaintiffs were notified by docket entries

made by the Defendants, not using the appropriate official form nor filing it as a supplement to

---

[6] The Court respectfully disagrees with the Second Circuit's analysis of Rule 3002.1's ability to provide for punitive
relief in *In re Gravel*, 6 F.4th 503 (2d Cir. 2021). The Court believes the dissent in *Gravel* has undertaken the correct
analysis.

[7] In its supplemental brief, Wells Fargo cites to *Freeman v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-03844-TWP-
DLP,  2020 WL 7489033 (S.D. Ind. Dec. 21, 2020), *reconsideration granted in part and denied in part*, 2021 WL
5140718 (S.D. Ind. Nov. 4, 2021), in support of its argument that there is no private right of action for a Rule 3002.1
violation. To the extent *Freeman* stands for that proposition, the Court recognizes it may be at odds with *Freeman*.
But the Court is not so sure that *Freeman* goes that far. In *Freeman*, the district court held there was no private right
of action in that court in connection with 11 U.S.C. § 524 (not specifically Rule 3002.1), but left open the
opportunity that the plaintiff could pursue her available remedies in the bankruptcy court – which is what is being
done here.

the proof of claim on the claims register pursuant to Rule 3002.1(d). Instead, these Plaintiffs have documents filed titled "Notice of Temporary Forbearance" in their respective bankruptcy court main case dockets, making similar statements as those filed in the Rodriguez and Harlow cases.

These docket filings are similarly confusing, creating detrimental effects on the Plaintiffs' bankruptcy cases. The filings do not outreach Rule 3002.1's grasp. Even though they are not expressly linked to Rule 3002.1, in that they do not use the Official Form 410S1 and make no reference to Rule 3002.1, the Court looks to the substance rather than the form of what Wells Fargo was trying to do – make all parties aware of a payment change which was incorrect, not requested by the debtor, and that was otherwise unwarranted. Notwithstanding the filing of the forbearance notices on the main case docket, the Court believes a plausible claim for violation of Rule 3002.1 is stated at this early stage of the proceedings. The motion to dismiss Count III as to Estes and Fewell will be denied.

## II. Count V: Unilaterally placing the Plaintiffs' loans in forbearance as a violation of the automatic stay

The Defendants argue that Count V should be dismissed as providing forbearance relief and filing notices of forbearance are not attempts to collect a debt or conduct otherwise prohibited by 11 U.S.C. § 362. The Plaintiffs allege as follows: Wells Fargo's actions constitute willful violations of the automatic stay as set forth in 11 U.S.C. § 362(a)(3) and (6). Wells Fargo is alleged to have violated the stay of Section 362(a) by preparing, executing, filing, and serving false forbearance notices that impacted the Plaintiffs' and other putative class members' ability to either confirm their Chapter 13 plans or perform according to Chapter 13 plan confirmation orders, all without obtaining relief from stay or the Plaintiffs' prior consent. (SAC, ¶ 275). The

Plaintiffs contend their loans, and the payments on these loans, which are made from each debtor's post-petition earnings, are property of each debtor's bankruptcy estate. Thus, Wells Fargo's unilateral action in changing the debtor's post-petition obligations constitute an exercise of control over property of the Plaintiffs' bankruptcy estate by an alteration of the "status quo." Wells Fargo is alleged to have had knowledge that the Plaintiffs were debtors in pending Chapter 13 cases and that the automatic stay was in effect. The Plaintiffs allege they were injured by Wells Fargo's willful conduct in violation of the stay.

Wells Fargo, in turn, contends the plain language of the notices of forbearance indicate they are not an attempt to obtain possession of the Plaintiffs' property or to collect on a claim. They contend that nothing more than a temporary suspension of mortgage payments was provided, and all other terms of the mortgage note and security interest other than the payment obligations, will remain in full force and effect unless otherwise adjusted by the court or through a loan modification. (D.C. ECF 10, at p. 19).[8] By the thinnest of margins, the Court will deny the motion to dismiss as to Section 362(a)(3) for the following reasons.

Bankruptcy Code Sections 362(a)(3) and (6) state that filing a petition for relief "operates as a stay, applicable to all entities, of – . . . (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; . . . [and] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title[.]" 11 U.S.C. §§ 362(a)(3), (6).

The Court finds that the Plaintiffs allege sufficient facts to support a plausible claim the Defendants acted to exercise control over bankruptcy estate property in violation of 11 U.S.C. § 362(a)(3). There is case law that supports the contention that the Plaintiffs' post-petition income

---

[8] Because some of the pleadings and briefs in the case before this Court originated in the District Court, references to documents filed in the District Court are referred to as "D.C. ECF".

and loan payments on mortgaged properties are property of each Plaintiff's bankruptcy estate.

For example, in *Mattox v. Wells Fargo, NA* (*In re Mattox*), No. 07-51925, 2011 WL 3626762

(Bankr. E.D. Ky. Aug. 17, 2011), a case involving the misapplication of post-petition mortgage

payments, the court ruled that the debtor's mortgage payments were part of the debtor's

bankruptcy estate, even after the payments had already been made. In *Mattox,* Judge Wise

observed as follows:

> Section 1306 defines property of the estate in a Chapter 13 bankruptcy. Pursuant to § 1306, in addition to property specified in § 541, "property of the estate" includes "all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12, of this title . . . ". 11 U.S.C. § 1306(a). Post-confirmation earnings are part of the Chapter 13 estate as well and therefore fully protected by the automatic stay. *Id; see also In re Kolenda,* 212 B.R. 851, 853 (W.D. Mich. 1997).

> Wells Fargo does not, and cannot, argue that the Plaintiff's post-petition income used to pay her Mortgage payments, and pre-petition and post-petition arrearage payments, is not property of the Chapter 13 estate. Wells Fargo argues instead that upon payment, this characterization no longer applies. This Court disagrees. Section 1306 does not provide for such a limitation. A creditor's "misapplication" of payments may be viewed as a creditor exercising improper control over property of the estate. The confirmed Plan, binding upon Wells Fargo pursuant to 11 U.S.C. § 1327, specified the extent to which Wells Fargo could properly exercise control over payments made by the Debtor and acts in contravention of that Plan may rise to the level of a willful violation of the stay.

*In re Mattox,* at *6. The Plaintiffs argue that here Wells Fargo effectively attempted to modify

the debtors' post-petition and/or post-confirmation obligations in their Chapter 13 plans by

imposing an unrequested forbearance on them, and by filing false forbearance notices on the

bankruptcy courts' dockets. Following *Mattox*, this is plausibly an exercise of control over

property of the estate in contravention of Section 362(a)(3).[9]

---

[9] The Plaintiffs have alleged they have been injured by Wells Fargo's willful misconduct in violation of the stay, and some have incurred attorney's fees in filing motions to strike the offending notices. Whether the Plaintiffs have incurred compensable "actual damages" beyond attorney's fees within the scope of 11 U.S.C. § 362(k)(1) remains to be seen. As the Fourth Circuit has stated, "[w]e are also of opinion that a finding of civil contempt is not a necessary

As to 11 U.S.C. § 362(a)(6), the Plaintiffs do not allege sufficient facts to support a plausible claim that Wells Fargo acted to collect, assess, or recover a claim by unilaterally placing the Plaintiffs in forbearance or sending the Plaintiffs forbearance notices. Actually sending collection notices or making threatening calls to collect are not required to constitute an act to collect. However, courts have found that merely sending statements, such as a transaction history or bookkeeping entries, without further "allegation that the mortgage company has attempted to collect the debt" does not violate the automatic stay. *Williams v. CitiFinancial Servicing LLC* (*In re Williams*), 612 B.R. 682, 695 (Bankr. M.D. N.C. 2020) (citing *Saylor v. Select Portfolio Servicing, Inc.* (*In re Saylor*), No 3:07-cv-229, 2008 WL 2397344, at \*5 (M.D. Ala. June 9, 2008)). Further, this Court accepts the Defendants' argument that their specific type of notice, a notice of forbearance, though it may be problematic for other reasons, is far afield from an attempt to collect. Thus, the Plaintiffs do not establish a claim for a violation of the automatic stay under 11 U.S.C. § 362(a)(6). The motion to dismiss Count V will be denied in part and granted in part.[10]

---

predicate in order to impose the sanctions of § 362(h) [the current statute's predecessor]. Proof that a debtor has been injured by a willful violation of the automatic stay is sufficient to invoke the sanctions under that section, of actual and punitive damages, costs and attorneys' fees." *Budget Serv. Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 293 (4th Cir. 1986).

[10] Wells Fargo attached to its brief an Order from the United States Bankruptcy Court for the District of Delaware dated May 13, 2020, which provides, in part, as follows: "[I]t is hereby ORDERED, that any creditor (mortgage holder or servicer) who provides a temporary suspension of mortgage payments to a debtor in this Court shall file with the Court, pursuant to Fed. R. Bankr. P. 3002.1, a Notice of Temporary Forbearance in the form attached as Exhibit A to this General Order (the 'Notice'); and its further ORDERED, that communication by a creditor to a debtor regarding forbearance and any statement or communication that follows during the forbearance period shall not be considered a violation of the automatic stay." The Notice has language that in some parts is verbatim to the notices filed in this case. It is curious to this Court that the notices in this case with the nearly identical language predate the filing of the Notice with the General Order in Delaware. This Court entered no similar order.

### III. **Counts VI, VII, and VIII: applying the Court's inherent power and 11 U.S.C. §**
**105**

The Defendants assert that Count VI should be dismissed as Section 105 is not a "roving

commission to do equity" and because the SAC does not allege conduct that could trigger its

application. The Defendants further assert that Count VII should be dismissed as no claim has

been stated under Section 105 and because the SAC does not allege facts that support a finding

of bad faith. Additionally, the Defendants assert that the Court lacks jurisdiction to enter

contempt findings with respect to the orders of other courts. Finally, the Defendants assert that

Count VIII should be dismissed as the Plaintiffs do not allege fraud on the court committed by an

officer of the court nor do they plead a scheme as required. The Court will merge Counts VI,

VII, and VIII into one count for its analysis. Each of these Counts asks the Court to invoke its

inherent powers and 11 U.S.C. § 105, albeit for different reasons: Abuse of Process/Inherent

Authority (Count VI), Contempt of Court (Count VII), and Fraud on the Court (Count VIII).

The Plaintiffs are requesting relief pursuant to the Court's inherent power and Section 105(a) for

the same alleged acts by Wells Fargo — the unilateral placing of the Plaintiffs' loans in

forbearance and the notices of forbearance filed with the Court containing false information.

Recitations of relevance in the SAC include the following: "Based upon such findings, and under

the Court's inherent powers and the authority set forth in 11 U.S.C. § 105(a), Plaintiffs seek an

award of sanctions and/or punitive damages, declaratory and injunctive relief, actual damages,

and attorneys' fees and costs." SAC, Count VI (Abuse of Process/Inherent Authority), ¶ 297.

"Plaintiffs ask this Court to find Defendants in contempt and in violation of the Bankruptcy

Code's and Rules' provisions and their purposes pursuant to the Court's inherent powers and

pursuant to its powers under 11 U.S.C. § 105(a). Plaintiffs also ask that the Court use its inherent

and statutory powers to award sanctions and actual damages, punitive damages, as well as

reasonable attorneys' fees and costs, and issue injunctive relief." SAC, Count VII (Contempt), ¶

305. "The Court can, and should, use its inherent and 11 U.S.C. § 105 authority to sanction

Defendants for this fraudulent conduct." SAC, Count VIII (Fraud on the Court), ¶ 314. In each

separate Count, the Plaintiffs ask for essentially the same relief under the same authority, but just

state different reasons why it should be granted in the separate Counts. Thus, the Court will

consider the inherent power and Section 105(a) claims for relief in Counts VI, VII and VIII as a

single count.

As do Article III courts, bankruptcy courts have an inherent power to impose sanctions

against parties or attorneys that appear or practice before it. This power is derived from the

courts' need to "manage their own affairs so as to achieve the orderly and expeditious disposition

of cases," and includes "the power to control admission to its bar and to discipline attorneys who

appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citations omitted). In most

cases, before the Court may use its inherent powers to issue sanctions, it must first find that the

party or counsel acted in bad faith. *See Chambers*, 501 U.S. at 50. Section 105(a) also

specifically grants bankruptcy courts the power to "issue any order . . . necessary or appropriate

to carry out the provisions of this title." It states that "[n]o provision of this title providing for the

raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte,

taking any action or making any determination necessary or appropriate to enforce or implement

court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). Bankruptcy courts

have "broad authority" under Section 105(a). *See Marrama v. Citizens Bank of Mass.,* 549 U.S.

365, 375 (2007). However, they may not use Section 105(a) or their inherent authority to issue

16

sanctions that contradict or override explicit mandates of other sections of the Bankruptcy Code. *Law v. Siegel,* 571 U.S. 415, 421, 428 (2014).

"[T]he Bankruptcy Code, both in general structure and in specific provisions, authorizes bankruptcy courts to prevent the use of the bankruptcy process to achieve illicit objectives." *In re Kestell*, 99 F.3d 146, 149 (4th Cir. 1996); *see also Chicora Life Ctr., LC v. UCF 1 Trust 1* (*In re Chicora Life Ctr., LC*), 553 B.R. 61, 67 (Bankr. D. S.C. 2016) ("The provisions of the Bankruptcy Code, including the equitable powers of the bankruptcy court under § 105, are designed to protect the public interest." (citing *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998))). To that end, Section 105(a) has been interpreted to instill bankruptcy courts with the civil contempt power. *See In re Walters,* 868 F.2d 665, 669 (4th Cir. 1989) (affirming the bankruptcy court's order holding in contempt an attorney who failed to comply with an order to refund unapproved attorney's fees). Thus, "[b]ankruptcy courts have inherent and statutory power to police the conduct of the parties who appear before them and to impose sanctions on those parties who abuse the judicial process." *In re Banner*, No. 15-31761, 2016 WL 3251886, at *7 (Bankr. W.D. N.C. June 2, 2016) (quotation marks and citation omitted). *See Walker v. UpRight Law* (*In re Walker*), 615 B.R. 770, 783–84 (Bankr. D. S.C. 2020).

In *Trevino*, the court found that Section 105(a) extends to sanctioning abuses of process. *Trevino* states:

> While "abuse of process" under § 105(a) is not defined in the Bankruptcy Code, a few courts essentially define it as "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system." Plaintiffs offered several cases demonstrating situations where courts have relied on § 105(a) for authority to sanction conduct, or to prevent an abuse of the judicial process. In most of those cases, bankruptcy courts have found that the filing of false documents— which disrupted the bankruptcy process and prejudiced debtors—constituted an abuse of process.

*Trevino*, 615 B.R. at 128.

The Court believes that the Plaintiffs have made a plausible claim that Wells Fargo engaged in a maneuver or scheme sufficient to undermine the integrity of the bankruptcy system. The Plaintiffs make the following allegations: the Defendants committed an abuse of process by filing false forbearance notices on the Court's claims register or docket. Wells Fargo's actions in filing objectively false forbearance notices constitute an abuse of process under Section 105(a). SAC, ¶ 290. Wells Fargo breached its obligation to submit accurate and truthful filings to the Court by filing false forbearance notices. When filing documents and forms with the Court, mortgage creditors and their agents have an obligation to ensure the filings are accurate and truthful. Indeed, the forms filed on the claims docket are certified as filed under penalty of perjury. The Defendants' forbearance notices are alleged to be false because the Plaintiffs did not request that the Defendants provide them a forbearance of their monthly mortgage payment obligations, while the notices state the forbearance was requested by them. SAC, ¶¶ 285-288.

In terms of contempt, violations of the automatic stay are punishable as contempt of court. Indeed, as a leading treatise has explained:

> A violation of the stay is punishable as contempt of court. Most courts will impose contempt sanctions for a knowing and willful violation of a court order, and the automatic stay is considered as equivalent to a court order. If the conduct is willful, even if based upon advice of counsel, contempt is an appropriate remedy. When a violation of the stay is inadvertent, contempt is not an appropriate remedy. Nevertheless, the creditor has a duty to undo actions taken in violation of the automatic stay. Failure to undo a technical violation may elevate the violation to a willful one.

3 *Collier on Bankruptcy* ¶ 362.12[2] (16th ed.) (footnotes omitted); *See In re Miszko*, 627 B.R. 809, 819 (Bankr. S.D. N.Y. 2021); *Faulkner v. National Adjustment Servs., Inc.* (*In re Faulkner*), No. 96-33001-S, 1997 WL 33807882 (Bankr. E.D. Va. 1997). The Court has already established that the Plaintiffs have alleged sufficient facts for a plausible claim for violation of 11 U.S.C. § 362(a)(3).

18

However, the Plaintiffs also allege that Wells Fargo should be held in contempt under the Court's Section 105 powers for violating 11 U.S.C. §§ 1322(b)(5) and 1327, and other provisions of the Code and Rules, the Plaintiffs' Chapter 13 plans, and the orders confirming the plans. SAC, ¶ 302. Further, the Defendants knew of the existence of these provisions, its acts were intentional, and the acts alleged herein violated the provisions and purposes of the Code and Rules. SAC, ¶ 303.

Wells Fargo argues Section 105(a) alone does not create a private right of action. Further, filing the Notices does not violate 11 U.S.C. § 1327 because the Notices do not purport to modify the terms of the confirmed plans. As such, the SAC does not state a claim for contempt based on Section 105. Wells Fargo further alleges that it did not act in bad faith, or "for reasons of harassment or delay or for other improper purpose" in filing the forbearance notices. Wells Fargo contends it took into consideration the global pandemic and the CARES Act to relieve borrowers from economic strife. Even if forbearances were entered by mistake, they were placed to assist, not harm borrowers.

The Court finds that the Plaintiffs have alleged a plausible claim for contempt under the Court's inherent powers and Section 105 powers, including violating the confirmation orders. The Fourth Circuit has set forth the standard to determine if a party is in contempt for violating a court order, and other courts have applied this test in confirmation order violations:

> To establish civil contempt [of an order, Debtors must prove] each of the following elements . . . by clear and convincing evidence: "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's 'favor;' (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result."

*Ashcraft v. Conoco, Inc.,* 218 F.3d 288, 301 (4th Cir. 2000) (citation omitted).[11]

Here, the Plaintiffs allege that placing their loans in forbearance without their knowledge or consent violated the Chapter 13 plan confirmation order, which sets forth how a debtor's payments will be made going forward. The Plaintiffs further allege Wells Fargo acted not only knowingly but willfully in unilaterally placing the Plaintiffs' loans in forbearance and asserting on the claims register that the debtors had requested this action. The Plaintiffs allege they were harmed by having to pay attorneys' fees to correct the record, in addition to risking seeming in a worse financial condition. The confirmation orders were beneficial to the debtors, following the basic bankruptcy principle of the opportunity for a fresh start. The Plaintiffs further allege Wells Fargo's motives were to take advantage of financial incentives under the CARES Act, without regard for the effects of the unsolicited forbearance on the Plaintiffs. Further, filing a false document upon the court for financial gain, if accepted as fact, constitutes an improper purpose, and upon proof, the Defendants could be found to have acted in bad faith.[12] Further, attempting

---

[11] Wells Fargo contends that this Court lacks jurisdiction to issue a contempt order for any action not pending in this district. D.C. ECF 10, p. 25. The Plaintiffs disagree. The Court agrees with *Golden v. Discover Bank* (*In re Golden*), 630 B.R. 896, 920 (Bankr. E.D. N.Y. 2021), that the authority granted to bankruptcy courts by 11 U.S.C. § 105 (a) is expansive. Section 105(a) gives broad authority to bankruptcy courts to "issue *any* order necessary . . . to carry out the provisions of the bankruptcy code." *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989)) (emphasis added). Further, if bankruptcy court jurisdiction is not permitted over a class action of debtors, "[Bankruptcy] Rule 7023 is virtually read out of the rules. This would ascribe to Congress the intent to categorically foreclose multi-debtor class actions arising under the Bankruptcy Code without a clear indication of such intent." *In re Golden*, 630 B.R. at 922 (quoting *Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), 609 F.3d 748, 754 (5th Cir. 2010). *See In re Homaidan*, No. 08-48275-ess, 2022 WL 16641075 (Bank. E.D. N.Y. Nov. 1, 2022). *But see Belton v. GE Capital Retail Bank*, 961 F.3d 612 (2nd Cir. 2021). Whether or not a class can or should be certified is a question for another day.

[12] As the Supreme Court stated in *Taggart v. Lorenzen*, 204 L.Ed.2d 129, 139 S.Ct. 1795, 1802 (2019), addressing the discharge injunction,

> Our cases suggest, for example, that civil contempt sanctions may be warranted when a party acts in bad faith. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). Thus, in *McComb*, we explained that a party's "record of continuing and persistent violations" and "persistent contumacy" justified placing "the burden of any uncertainty in the decree . . . on [the] shoulders" of the party who violated the court order. 336 U.S. at 192–193, 69 S.Ct. 497. On the flip side of the coin, a party's good faith, even where it does not bar civil contempt, may help to

to unilaterally modify the confirmed payment plans by placing the Plaintiffs' loans in forbearance for alleged financial gain also constitutes an improper purpose.

The Court is unpersuaded a plausible claim has been asserted to invoke its inherent powers and Section 105(a) based on a theory of fraud on the court. The Plaintiffs allege the following: the Defendants have committed fraud upon the court by filing false forbearance notices upon the court's docket and claims register. The Defendants' false forbearance notices did in fact cause, or would have, but for the diligence of Plaintiffs' counsel, caused a denial or delay of confirmation of then unconfirmed Chapter 13 plans, in addition to modifying the Plaintiffs' Chapter 13 bankruptcy plans without prior disclosure, Court approval, or the Plaintiffs' consent. The Defendants knew the representations were false or filed the documents with reckless disregard for the truth. The Defendants did so in pursuit of a scheme to benefit financially from CARES Act incentives, which would favor lenders who were asked by debtors to be placed in forbearance. Lastly, the Plaintiffs allege the Court and the bankruptcy process have been damaged through these fraudulent acts.

---

determine an appropriate sanction. Cf. *Young v. United States ex rel. Vuitton et Fils S. A.*, 481 U.S. 787, 801, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) ("[O]nly the least possible power adequate to the end proposed should be used in contempt cases" (quotation altered)).

*Taggart*, 139 S. Ct. at 1802. Further,

[t]he appropriate remedy for civil contempt is within the court's broad discretion. *In re GMC*, 61 F.3d 256, 259 (4th Cir. 1995). "Remedies include ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees." *Id.* Attorney's fees for civil contempt are available in "exceptional cases" where the contemnor's conduct was "malicious, fraudulent, willful or deliberate in nature." *Retail Serv. Inc. v. Freebies Publ'n*, 364 F.3d 535, 550 (4th Cir. 2004).

*Mountain Valley Pipeline, LLC v. Easements to Construct, Operate, & Maintain a Nat. Gas Pipeline Over Tracts of Land in Giles Cnty., Craig Cnty., Montgomery Cnty., Roanoke Cnty., Franklin Cnty., & Pittsylvania Cnty., Virginia*, No. 7:17-CV-00492, 2020 WL 2575507, at *2 (W.D. Va. May 21, 2020).

The Defendants argue the following: the Plaintiffs did not allege that the fraud upon the court was committed by an officer of the court (an attorney). The notices in fact were filed by non-attorneys, who cannot operate as officers of the court. Further, the Plaintiffs did not plead a "scheme" to knowingly act in contravention of a party's legal rights and prevent them from defending themselves.

Fourth Circuit case law does not directly lay out the elements of fraud upon the court, a doctrine created by common law. However, cases within the Fourth Circuit cite to *Great Coastal Express, Inc. v. Int'l Bhd. of Teamsters*, 675 F.2d 1349 (4th Cir. 1982), for guidance. *Great Coastal* involved litigation against a union by a transportation company alleging damages to equipment caused by union violence and lost business caused by secondary boycotting. The union violence claim was eliminated by directed verdict at the close of evidence, and Great Coastal subsequently recovered a substantial verdict on the second claim. Evidence was later discovered by the union that Great Coastal had planned and executed some of the acts of violence complained of in the case. In a later attack on the judgment, the Fourth Circuit stated as follows:

> Not all fraud is "fraud on the court." 11 *Wright & Miller, Federal Practice and Procedure* s 2870 at 253 (1973). . . . "[F]raud on the court" is typically confined to the most egregious cases, such as bribery of a judge or juror, or improper influence exerted on the court by an attorney, in which the integrity of the court and its ability to function impartially is directly impinged. . . .
>
> "'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud inter partes, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b)(3) or to the independent action."

*Great Coastal* at 1356. G*reat Costal* further held as follows:

Despite the confusion inherent in this doctrine, we are not totally without guideposts. We concur in the appraisal of the district court that the fraud here consists of perjury and fabricated evidence. Early in the Court's analysis in Hazel-Atlas, the Court commented "This is not simply a case of a judgment obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury." 322 U.S. at 245, 64 S.Ct. at 1000. Motivated at least in part by this language, courts confronting the issue have consistently held that perjury or fabricated evidence are not grounds for relief as "fraud on the court." . . .

This conclusion is consistent with the general definitional principles just described. Perjury and fabricated evidence are evils that can and should be exposed at trial, and the legal system encourages and expects litigants to root them out as early as possible. In addition, the legal system contains other sanctions against perjury. See *Lockwood v. Bowles*, 46 F.R.D. 625 (D.D.C.1969); *Shammas v. Shammas*, 9 N.J. 321, 88 A.2d 204 (1952) (Brennan, J.). Fraud on the court is therefore limited to the more egregious forms of subversion of the legal process already suggested, those that we cannot necessarily expect to be exposed by the normal adversary process.

[The union] also takes exception to the district court's conclusion that fraud on the court requires involvement by attorneys. Involvement of an attorney, as an officer of the court, in a scheme to suborn perjury would certainly be considered fraud on the court. IBT points out, however, that the record in Hazel-Atlas indicates that the company "attorney" who prepared the article with the intent that it be signed by another was in fact a "patent attorney," a title given at least at that time to any registered patent agent, and that he had not attended law school and was not the member of any bar. Other circuits have also recognized that fraud on the court can occur without the involvement of attorneys. See *Toscano v. Commissioner*, 441 F.2d 930, 933-34 (9th Cir. 1971); *Lim Kwock Soon v. Brownell*, 369 F.2d 808 (5th Cir. 1966). However, in view of our holding that the type of fraud in this case does not rise to the level of fraud on the court, we need not consider the question of attorney involvement.

*Great Coastal* at 1357. The Court concluded that the bad actors' conduct in *Great Coastal*, "however reprehensible, [is] not tantamount to fraud on the court." *Id.*

Other Fourth Circuit decisions have cited *Great Coastal* and other Circuit Court decisions in maintaining that a finding of fraud on the court is rare and extreme: "A party asserting fraud on the court must establish that the conduct complained of was part of 'a deliberate scheme to directly subvert the judicial process.'" *Asterbadi v. Leitess,* 176 F. App'x 426, 430 (4th Cir.

2006); "Conduct that is not exemplary need not undermine the 'integrity of the court and its ability to function impartially' within the meaning of 'fraud on the court.'" *Fox ex rel. Fox v. Elk Run Coal Co.*, 739 F.3d 131, 137 (4th Cir. 2014); "'perjury alone, absent allegation of involvement by an officer of the court . . . has never been sufficient [to constitute fraud upon the court].'" *In re Genesys Data Techs., Inc.,* 204 F.3d 124, 130–31 (4th Cir. 2000), *certified question answered*, 95 Haw. 33, 18 P.3d 895 (2001) (citing *Geo. P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir.1995)).

The Court does not believe the conduct alleged herein plausibly rises to the level of a fraud on the court within the confines of *Great Coastal*, and will dismiss the relief requested on that basis. In the other respects asserted above, the claim under the Court's inherent authority and 11 U.S.C. § 105(a) will proceed.[13]

### IV. <u>Wells Fargo & Co. Veil Piercing</u>

The Defendants assert that Wells Fargo & Co. ("WFC") should be dismissed from this case as the Plaintiffs have not pleaded that WFC took any of the actions alleged in the SAC, nor did they allege sufficient facts to support piercing the corporate veil and holding WFC responsible for the acts of its subsidiary. The Plaintiffs assert that WFC should not be dismissed as they have alleged sufficient facts to show that WFC "exercises specific and financial control over the operations" of Wells Fargo Bank, "dictates the policies, procedures, and practices" of Wells Fargo Bank, "exercises power and control over the specific activities upon which the

---

[13] The Plaintiffs further seek declaratory relief in Part VIII of the SAC. "In the context of Federal Rule of Civil Procedure 12(b)(6), courts regularly reject declaratory judgment claims that seek resolution of matters that will already be resolved as part of the claims in the lawsuit. *See, e.g.*, *Metra Indus.*, 2014 WL 652253, at *2 (dismissing declaratory judgment claim where an existing breach of contract claim sought duplicative relief)." *In re Ayers*, 581 B.R. 168, 183 (Bankr. W.D. Va. 2018), *aff'd sub nom. Ayers v. United States Dep't of Def.*, No. 7:18-CV-00032, 2019 WL 4145240 (W.D. Va. Aug. 30, 2019). The issues the Plaintiffs seek to have addressed in Part VIII will be addressed elsewhere in the case. This request will be dismissed.

24

claims herein are based, and is the ultimate recipient of the ill-gotten gains described." SAC, ¶ 7.

The Plaintiffs argue that they alleged WFC directed and controlled the false forbearance notice

scheme and that it is benefitting from the profits resulting from the scheme. The Plaintiffs also

specifically allege that WFC "works with its network of consumer bankruptcy attorneys and

vendors, . . . to further Wells Fargo's false forbearance scheme." SAC, ¶ 41. In support of their

position, the Plaintiffs also assert that the District Court found that the Plaintiffs "alleged a

fraudulent scheme in the Second Amended Complaint, which included allegations that WFC and

Wells Fargo Bank, N.A. ("WFBNA") were working together (and with third parties) to further

and benefit from their fraudulent scheme." ECF No. 74, page 4 (citing *Harlow*, 2022 WL

2231601 at *3-5). The Defendants argue that this is a mischaracterization of the District Court's

opinion.

"It is a general principle of corporate law deeply 'ingrained in our economic and legal

systems' that a parent corporation (so-called because of control through ownership of another

corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524

U.S. 51, 61 (1998). "The law of the state in which an entity is incorporated generally governs the

question whether a court may pierce an entity's veil." *Sky Cable, LLC v. DIRECTV, Inc.*, 886

F.3d 375, 386 (4th Cir. 2018) (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior

de Cuba*, 462 U.S. 611, 621 (1983)). Wells Fargo & Co. is incorporated in Delaware.[14]

Delaware law generally supports the idea that "[t]o state a 'veil-piercing claim,' the

plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has

created a sham entity designed to defraud investors and creditors." *Crosse v. BCBSD, Inc.*, 836

A.2d 492, 497 (Del. 2003). "Specific facts a court may consider when being asked to disregard

---

[14] The Plaintiffs assert in the SAC that WFC is organized under the laws of Delaware. The Defendants also state in the memorandum in support of the motion to dismiss that Delaware is WFC's state of incorporation.

the corporate form include: '(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder.'" *Doberstein v. G-P Industries, Inc.*, No. 9995-VCP, 2015 WL 6606484, at *4 (Del. Oct. 30, 2015); *In re Opus East, LLC*, 528 B.R. 30 (Bankr. D. Del. 2015) (considering similar factors).

The Plaintiffs fail to allege facts beyond mere implications that, because the Defendants may have to some extent collaborated in business operations, WFC directly participated in Wells Fargo Bank's alleged misconduct. The Plaintiffs allege different ways in which WFC benefits from Wells Fargo Bank, N.A.'s funds as one of its subsidiaries, including funds generated in connection with the alleged fraudulent forbearance scheme. Even taken as true, the Plaintiffs fail to plead facts sufficient to pass the appropriate veil-piercing test. The Defendants' motion to dismiss Wells Fargo & Co. will be granted.

## **CONCLUSION**

For all of the above stated reasons, the Defendants' Motion to Dismiss the Second Amended Complaint is granted in part and denied in part. A separate Order will follow.